# Watts *v.* The State.

## *Murder.*

(Decided May 14, 1912. 59 South. 270.)

1. *Grand Jury; Organization; Objection.*—Under section 7572, Code 1907, no objection can be taken to the formation of a special grand jury summoned by direction of the court.

2. *Appeal and Error; Record; Questions Presented.*—Where the evidence in support of a plea in abatement is not shown by bill of exceptions the ruling of the court directing a finding for the state on the plea cannot be reviewed.

3. *Homicide; Evidence; Declarations by Accused.*—What defendant said about the killing and his attitude and conduct with respect thereto, not in the nature of direct expressions of guilt, though incriminating, were admissible against him without preliminary proof of their voluntary character.

4. *Same.*—A non-expert witness was properly allowed to state that an axe found by him on the premises where the killing occurred, had blood and hair on it when he examined it, since it was the statement of a simple fact as to which expert knowledge was not necessary.

5. *Same; Self-Defense.*—Where the defense was self-defense, questions as to whether a state's witness saw a certain negro preacher frequently at defendant's house, or saw him give letters to defendant's wife from another negro, were properly excluded as immaterial.

6. *Same.*—Where defendant set up that the killing was done in defending himself from assault by deceased with a butcher knife, it was competent to show that his house was searched for several hours after the killing, but no weapons were found.

7. *Same; Physical Condition of Deceased.*—Where defendant was an able-bodied man charged with killing his wife, a woman of average size and height, it was competent to show the physical con-

dition of the wife at the time of the commission of the offense, the defendant alleging that the killing was done in self-defense.

8. *Same; Previous Quarrels and Ill Feeling.*—Where the defendant was tried for killing his wife, evidence that the previous day deceased had attacked defendant with scissors, accompanying the attack with a threat, was admissible as tending to show the general nature of the quarrel.

9. *Same; Duty to Retreat.*—Where defendant and his wife occupied a house jointly, defendant occupying one side and deceased the other, they having separated about ten days previous, and defendant was in the exclusive occupancy of the other part of the house, he was not bound to show that when assaulted by deceased at the time of the killing, there was no convenient or reasonable mode of escape open to him by retreating without increasing his danger, as the duty to retreat was not applicable where defendant was in his own home.

10. *Same; Self-Defense.*—A charge asserting that the danger that will excuse one for killing another need not be real nor actual, but, if the appearance of danger surrounding defendant at the time was such as to produce a reasonable belief that he was in danger of his life or great bodily harm, he should be acquitted, if without fault in the difficulty, and that in such case defendant was not required to wait and see what would be the result of the appearance, but might act thereon, and anticipate a threatened danger, even to taking life, were properly refused as not clearly informing the jury that the appearance of danger which is not real, must not only have been such as to impress the mind of a reasonable man with its reality, but must also have actually impressed the mind of defendant.

11. *Same.*—It is not necessary that a defendant should have been actually in danger of death or great bodily harm, but he might act on appearances taken in the light of all the evidence, and has the right to regard the conduct of his assailant in the light of any threat made against him, and if the circumstances of the killing were such as to justify a reasonable man in the honest belief that he was in danger of death or great bodily harm, he had a right to kill in self-defense.

12. *Charge of Court; Reasonable Doubt.*—A charge asserting that the only foundation for a verdict of guilt was that the entire jury should believe the evidence beyond a reasonable doubt, and to a moral certainty that defendant was guilty "as charged in the indictment," to the exclusion of every probability of innocence, required defendant to be acquitted unless the jury should believe beyond a reasonable doubt that he was guilty of murder in the first degree, and hence, was faulty.

13. *Same.*—A charge asserting that the requirement that juries must believe defendant guilty on the evidence beyond a reasonable doubt is not a fiction of law, but is intended as a shield against conviction until that degree of proof is made, which leads the jury to believe that defendant cannot reasonably be innocent from the evidence, is obscure and argumentative.

14. *Same; Good Character.*—If proven, good character may have the effect to raise such a doubt as to authorize an acquittal of a

charge of murder, when taken in connection with the whole evidence, when the jury would otherwise entertain no doubt.

APPEAL from Colbert Circuit Court.

Heard before Hon. C. P. ALMON.

Will Watts was convicted of murder in the first degree, and he appeals. Reversed and remanded.

The motion to quash the indictment was based on the fact that certain jurors were impaneled and sworn, and a foreman from their number selected, and the grand jury thus organized, but that one Long absented himself, leaving 17 persons, whose names are here set out, and that the court directed the sheriff again to call from the list of the venire the names of the first 18 persons who appeared on the list of qualified jurors in attendance upon the court, and who had not been excused by the court, the names being as above set out, except Long, who had absented himself, and including Gifford M. Dobbs, which said persons, together with Dobbs, were sworn and impaneled as grand jury and returned this indictment. The first plea in abatement is that the grand jury which returned the indictment was not drawn by the officers designated by law to draw them. The other pleas in abatement set up substantially the same state of facts as the motion to quash.

The following charges were refused to the defendant: (16) "The only foundation for a verdict of guilt in this case is that the entire jury shall believe from the evidence beyond a reasonable doubt and to a moral certainty that the defendant is guilty as charged in the indictment, to the exclusion of every probability of innocence and every reasonable doubt of his guilt, and if the prosecution had failed to furnish such measure of proof, and to impress the mind of the jury with such belief of his guilt, they should find him not guilty."

(26) "I charge you that the danger that will excuse one for killing another need not be real or actual. If the jury believe from all the evidence in this case that the appearances of danger surrounding the defendant at the time of the killing were such as to produce a reasonable belief in the mind of the defendant that his life was in danger, or that he was about to suffer great bodily harm, the defendant being without fault at the time, the law holds him harmless, and the jury must acquit." ((27) "The law is a reasonable master, and if the evidence shows you that at the time of the killing the appearances of danger surrounding the defendant were such as to produce a reasonable belief in the mind of the defendant that his life was in danger, or that he was about to suffer great bodily harm, and that the defendant was without fault in bringing on the difficulty, then the jury ought to acquit." (28) "If the defendant was without fault in provoking or bringing on the difficulty, and if the conduct of the deceased was such at the time of the killing as to reasonably impress the mind of the defendant that her intention was to take his life, or do him great bodily harm, then I charge you that the law did not require the defendant to wait and see what would be the result of the appearances, but the defendant was authorized to act upon the appearances, and anticipate and avert the threatened danger, even to the taking of the life of the accused." (32) Same as 16. (40) "I charge you that the requirement that juries must believe that the defendant is guilty from the evidence beyond a reasonable doubt is not a fiction of the law, but is intended as a substantial shield against conviction until that degree of proof is made which leads the jury to believe that the defendant cannot reasonably be guiltless under the evidence." (58) "Good character, if proven, when taken

in connection with the whole evidence, may have the effect to generate such a doubt as to authorize an acquittal, when the jury would otherwise entertain no doubt." (60½) "If the defendant was without fault in provoking or bringing on the difficulty, and if the conduct of the deceased was such at the time of the killing as to reasonably impress the mind of the defendant that the intention was to take his life, or do him great bodily harm, then I charge you that the law did not require the defendant to wait and see what would be the result of the appearances, but the defendant is authorized to act upon the appearances, and anticipate and avert the threatened danger, even to the taking of the life of the assailant." (64½) Same as 16. (66) Same as 27. (67) Same as 60½. (C) "It is not necessary, under the evidence in this case, that defendant should have been actually in danger of death or great bodily harm at the time he killed his wife. He had the right to act on the appearances of things at the time, taken in the light of all the evidence, and he had the right to interpret the conduct of his wife in the light of any threat that the evidence proves his wife to have made against him. If the circumstances of the killing were such as to justify a reasonable man in the belief that he was in danger of great bodily harm, or death, and he honestly believed such to have been the case, then he had a right to shoot his wife in his own defense, although, as a matter of fact, he was not in actual danger; and if the jury believe from the evidence that defendant acted under such conditions and circumstances as above set out, the burden of showing that he was not free from fault in bringing on the difficulty is on the state, and, if not shown, the jury should acquit."

[Watts v. The State.]

No counsel marked for appellant.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

SOMERVILLE, J.—The defendant killed his wife, Topsey Watts, and was convicted of murder in the first degree, and sentenced to life imprisonment.

Under section 7572 of the Code, no objection can be taken to an indictment for irregularities in the organization of the grand jury, "except that the jurors were not drawn in the presence of the officers designated by law," "and neither this objection nor any other can be taken to the formation of a special grand jury summoned by the direction of the court."

Neither the motion to quash the indictment, nor the second, third, or fourth pleas in abatement, exhibited this objection to the indictment, and they were properly eliminated.

The first plea, setting up this objection, presented a proper issue for the jury, and on the evidence adduced the court instructed the jury to find for the state. The evidence on this issue is not shown by the bill of exceptions, and we cannot review this ruling.

What defendant said about the killing, and his attitude and conduct with respect thereto, not being in the nature of direct confessions of guilt, however incriminatory they might be, were admissible against him without preliminary proof of their voluntary character.— McGehee v. State, 171 Ala. 19, 55 South. 159. The direct admissions of the defendant that he did the killing were all sufficiently shown to have been made voluntarily, without inducements or threats. The trial court did not err in its rulings in these particulars.

The witness Challen was properly allowed to state that an ax found by him after the killing on the premises where it occurred had blood and hair on it when found and examined by him. This was the statement of a simple fact as to which expert knowledge was not needed.

Whether or not the state's witness Cobb saw a certain negro preacher frequently at defendant's house, or saw him giving letters from another negro to defendant's wife, was wholly immaterial to any issue involved, and objections to these questions were properly sustained.

The fact that deceased was when killed in a state of pregnancy so advanced as to be visible to observation cannot be regarded as entirely irrelevant to some aspects of the case. It might serve to explain the occupation by the wife of a separate apartment in the house, and might also aid the jury in estimating her efficiency or inefficiency as a fighting machine, and her consequent ability or inability to pursue, overcome, and kill or dangerously injure defendant; her alleged weapon being only a butcher knife of unknown length, while she was a woman of average size, about 5½ feet tall, and defendant was an able-bodied man. We think this evidence was properly admitted.

It was clearly competent to prove by the witness Challen that several hours after the killing he searched defendant's house for weapons and found none; the reference being especially to the butcher knife with which defendant claimed deceased was attacking him.

The fact that on the day of the killing deceased attacked defendant with scissors, accompanying the attack with a threat, should have been admitted in evidence. This was not going into the details or merits of the altercation, but only showing its general nature.

In the course of his oral charge the trial judge instructed the jury that, before defendant could successfully plead and establish self-defense, it was necessary for him to show that at the time of the killing there was no convenient or reasonable mode of escape open to him by retreating , declining combat, unless by retreating he increas'.d his danger. Defendant duly objected to this part of the charge, the insistence being that this principle, though ordinarily applicable, cannot be applied to a killing in defendant's own home.

The reason of the rule is said to be that "the law regards a man's house as his castle, or, as was anciently said, his tutissimum refugium, and, having retired thus far, he is not compelled to yield further to his assailing antagonist. When he has reached this refuge, he may stand at bay, and may turn on and kill his assailant, if this be apparently necessary to save his own life; nor is he bound to escape from his house in order to avoid his assailant.—*Jones v. State*, 76 Ala. 8, 16. And it seems, when attacked in one part of his house he need not withdraw to another part, though he may safely do so and there find a secure asylum.—*Brinkley v. State*, 89 Ala. 34, 8 South. 22, 18 Am. St. Rep. 87. The rule is of ancient origin, and indeed is deeply rooted in the elemental instincts of humanity. In its original applications it doubtless had in view only attacks from external aggressors, but in the case of *Jones v. State*, *supra*, it was held equally applicable to partners and tenants in common; the court declaring that "the doctrine of retreat, or of declining combat by retreat, has no application to cases of this character, and that the right of self-defense may be perfect without it, where one partner or co-tenant is assailed by another, each being equally entitled to the possession of the house or premises where the attack is made." The

[Watts v. The State.]

reasoning of the court in support of this conclusion is, we think, convincing. In the recent case of *Hutcheson v. State,* 170 Ala. 32, 54 South. 119, the defendant killed her husband in the house jointly occupied by them as a dwelling, and the doctrine of *Jones v. State, supra,* was applied. A charge was there requested by defendant "that it was not necessary for the defendant to retreat, because the facts in the case show that the defendant was in her own castle," and for its refusal the judgment of conviction was reversed. The report of the case shows only that the attack and the killing occurred in the home which the defendant and the deceased were jointly occupying.

In the present case it appears without dispute that the house in which the killing was done had been occupied jointly by defendant and deceased as their common home, and was then so occupied, except that about 10 days previously deceased had separated herself from her husband and children, and was in the exclusive occupation of one of the two rooms of the house. Had the evidence showed that defendant went into this room and was there attacked by his wife, the case might be different, and it may be that a due regard for the sacredness of human life would require a qualification of the principle announced in *Jones v. State,* and *Hutcheson v. State,* to the extent that those occupying separate rooms under a common roof should be held to the duty of retreating each to his own quarters, or at least from the other's quarters, rather than to stand there and kill, if such retreat might reasonably avoid the necessity of killing and offer safety to the one assailed.

The evidence, however, does not show that defendant entered his wife's room, nor that he was anywhere but in his own room, when he fired the shot that killed her. The rooms were adjoining, and the door open between

them; and it is at least inferable from defendant's testi-. mony that he met the alleged assault standing in his own room. There is, therefore, no occasion to consider the exceptional case above suggested. It results that the charge of the trial court on this phase of the case was erroneous in predicating the duty of retreat under the circumstances described by defendant in his testimony before the jury.

Charges 26, 27, 28, 60½, 66, and 67 do not clearly inform the jury that the appearance of danger, if not real, must not only have been such as to impress the mind of a reasonable man with its verity, but must also have actually so impressed the mind of the defendant, and were for this reason well refused.

Charge C was free from this fault, and should have been given.

Charges 16, 32, and 64½ were faulty, in that they required defendant's acquittal, unless the jury should believe beyond a reasonable doubt that he was guilty "as charged in the indictment"; that is, of murder in the first degree.

Charge 40 was faulty, in that it was argumentative and also obscure in meaning.

Charge 58 has been in substance approved by this court, and its refusal was erroneous.—*Taylor v. State,* 149 Ala. 32, 42 South. 996.

For the errors pointed out the judgment must be reversed, and the cause remanded for another trial.

Reversed and remanded. All the Justices concur.