203 So.2d 279

**Dalton T. SMITH**

v.

**STATE.**

**7 Div. 848.**

Court of Appeals of Alabama.

Oct. 17, 1967.

MacDonald Gallion, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

Scott & Scott, Fort Payne, for appellant.

JOHNSON, Judge.

Appellant was indicted by the Grand Jury of DeKalb County, Alabama, for the offense of murder in the second degree. He was found guilty of manslaughter in the first degree and sentenced to a term of five years in the State penitentiary as punish-

ment therefor. Appellant was denied a motion for new trial and makes this appeal from the judgment of the lower court.

The State's first witness was the nine year old son of deceased who stated that on a Sunday morning several months previously, appellant and his brother came to his (and his father's) home and that he and his father accompanied them in an automobile to investigate the possibility of his father's buying a car. The boy testified that they went to one man's house to return the automobile and pick up a truck, that they rode to one Fuzzy Philmore's house where his father and appellant obtained some whiskey, that his father and appellant spent the rest of the afternoon riding around in the truck and drinking until they parked to finish drinking this whiskey and some additional whiskey which they had purchased "out on the mountain."

The boy further stated that one Bill Williams drove up and drank whiskey with the two men and that they left when Williams' car got stuck off the side of the road. The boy said that at this time he, his father and appellant drove to the home of deceased to get a chain and that, at one point, his father and appellant had an argument and appellant pulled out a knife.

The boy testified that at about dusk they arrived home and his father got out of the truck and went into the house and that he accompanied him. He said that appellant then returned, drove up the road near the house and yelled up at the house; that he and his father were standing on the front porch when he heard one gun shot; that his father had a twelve gauge shotgun which he fired twice as he came off the porch steps; that appellant then fired two shots which struck his father in the chest; and that his father staggered over to the side of the house where the boy and his mother found him dying. The boy also stated that he saw appellant drive off in the truck and that just before getting out of the truck his father and appellant had an argument.

The State's next witness was deceased's widow who stated that her husband and son left on the Sunday morning in question in a car with appellant and his brother and did not return until dark. She testified that when they returned her husband and son got off the truck and came up to the house and that her husband then went into the house and got a gun; that her husband and appellant were cursing; that appellant left for a few minutes and returned; and that she heard appellant call out to her husband, "I have got a bead on you, John, old boy." She stated that she recognized appellant's voice and that her husband then said, "I have one on you, too." She testified that she next heard a gun shot and saw the flash of a gun from the direction in which appellant was standing, after which her husband went into the house and returned with his gun and shells and that she saw him put two shells in the gun. She said that her husband fired back after she heard the appellant state, "If you don't believe I will shoot you * * * I will show you." Thereafter, she heard her husband fire two shots as he went off the steps into the yard. The next voice she heard was that of appellant who fired again, after which her husband staggered back and fell near the side of the house.

State Toxicologist Van Pruitt, Jr., testified that he examined the body of deceased at the funeral home the day following the shooting and found seventy-four pump type wounds in the upper chest caused by shotgun pellets, which pellets ruptured the main artery leading from the heart and caused his death; that the shotgun in question was a No. 5 in size; and that he found "0.24% ethyl alcohol" in the blood of the deceased.

Appellant's first witness was one Bill Williams who testified that he saw appellant and appellant's brother, the deceased, and deceased's son at his brother's store on a Sunday afternoon in late January, 1965. The witness stated that the deceased had offered him a drink and that he had accepted it, and that he spent a part of the afternoon

with them riding around in the truck and drinking. He stated that his truck got stuck in a ditch and that appellant and deceased and deceased's son left to get a chain; and that he saw a gun in the back of appellant's car but that he could not describe it other than to say it was a rifle or shotgun.

Appellant testified that he and the deceased had drunk two pints of whiskey that afternoon and had argued but that he did not draw his knife other than to clean his finger nails; that he did not threaten deceased; and that he tried to calm him down when he left him at his house.

Appellant's brother testified substantially the same as appellant except to state that he only heard his brother shoot once and that he (the witness) ran away from deceased's home.

Appellant contends that the court erred in permitting the State, over timely objection and exception of appellant, to question deceased's son regarding an argument which took place at the store where appellant pulled his knife on the deceased. The testimony here referred to is as follows:

"Q. Was any argument going on with anybody?

"A. Yes, sir.

"MR. SCOTT: Now, we object to the details of any difficulty or argument outside the one that is connected with this hearing.

"THE COURT: Overruled.

"MR. SCOTT: We except.

"Q. Who was arguing?

"A. Daddy and Duck [appellant].

"Q. Daddy and Duck, Mr. Dalton Smith? Did you see any—did they have anything in their hands?

"A. Yes.

"MR. SCOTT: We object to that, immaterial, irrelevant, incompetent, not a part of this thing we are trying.

"THE COURT: Overruled.

"MR. SCOTT: We except.

"Q. Who had something in their hands?

"A. Duck.

"MR. SCOTT: We object to that. Object to the same grounds.

"THE COURT: Overruled.

"Q. What did Duck have in his hands?

"A. A knife.

"MR. SCOTT: Object to that as irrelevant, incompetent, immaterial and forms no part of the res jesti [sic] that occurred.

"THE COURT: I don't know—understand it that way, that all the sequence happened on the same day.

"MR. SCOTT: Sometime before and a different place.

"THE COURT: Overruled.

"MR. SCOTT: We except.

"Q. Was this knife Duck had in his hand opened or closed?

"MR. SCOTT: Will you give me an exception to all that?

"THE COURT: Yes.

"A. Opened.

"Q. The blade was open?

"A. Yes, sir.

"Q. Were they arguing when he had the knife in his hand?

"A. Yes, sir.

"Q. Did your daddy have a knife in his hands?

"A. No. sir."

It appears that the foregoing incidents occurred in the afternoon in the presence of decedent's son, the appellant's brother and a Bill Williams. The shooting occurred

just at dark, "about a quarter to six", and decedent's son and appellant testified as to "arguments" between appellant and deceased throughout the entire afternoon. The testimony also showed that appellant and deceased were continually together except for about "5 or 10 minutes" immediately prior to the shooting.

■ This line of questioning was permissible as a part of the res gestae. The case of Pugh v. State, 30 Ala.App. 572, 10 So.2d 833, cert. den. 243 Ala. 507, 10 So.2d 836, states in part as follows:

"* * * [Where] evidence presented one continuous transaction between the parties from the time of their meeting in afternoon *several hours* before commission of alleged offense, evidence regarding the happening between the parties prior to their arrival at the place where the offense complained of was alleged to have been committed was admissible as part of the 'res gestae'." (Emphasis ours).

The case of Welch v. State, 28 Ala.App. 273, 183 So. 879, cert. den. 236 Ala. 577, 183 So. 886, which dealt with the killing of a Chief Deputy Sheriff, and where the court allowed testimony of continuous events from arrival of Sheriff through his death *more than a day* later, the following was stated:

"The res gestae of the crime is not confined to the moment of the killing, but includes acts, statements, occurrences, and circumstances forming a part or a continuation of the main transaction, beginning with the defendant's arrival in Talladega, and continuing through the days of the organization of the union and 'Picket Line' up to and including the actual homicide. 16 C.J. 572 (1114) note 36."

In Sexton v. State, 239 Ala. 287, 196 So. 744, cert. den. 239 Ala. 662, 196 So. 746, the court stated the following:

"In Murphy v. [George] Brown & Co., 91 N.J.L. 412, 103 A. 28, 30, Mr. Wharton's definition (as contained in Vol. I Wharton's Evidence, 10th Ed., p. 504, § 263) is approved as follows: '* * * It is well settled that the res gestae includes those circumstances which are the undesigned incidents of a particular litigated act. They may be separated from the act by a lapse of time more or less appreciable, and may consist of speeches of any one concerned, whether participant or bystander. They may comprise things left undone as well as things done. They must be the necessary incidents of the litigated act in this sense that they are part of the immediate preparations for or emanations of such act, and are not produced by the calculated policy of the actors. Hunter v. State, 40 N.J.Law 495; * * *.'"

See also Byrd v. State, 257 Ala. 100, 57 So.2d 388; Armor v. State, 63 Ala. 173; and Hainsworth v. State, 136 Ala. 13, 34 So. 203.

For the foregoing reasons we feel that the testimony of deceased's son was properly admitted into evidence.

In his brief, appellant contends that "proof of good character alone is sufficient to create a reasonable doubt of guilt." He cites Williams v. State, 32 Ala.App. 597, 28 So.2d 731, which does not appear to be an analogous case; and Beavers v. State, 247 Ala. 181, 23 So.2d 604, from which we quote the following:

"Defendant's refusal charge 7 is as follows: '7. The Court charges the jury that proof of good character, if proved to your reasonable satisfaction, may be sufficient to authorize you to acquit the defendant *when taken in connection with all the other testimony*.'" (Emphasis ours.)

■ It is clear that "proof of good character *alone*" is *not* sufficient to create a reasonable doubt of guilt, but that it must be taken "in connection with all other testimony". Thus, refusal of appellant's charge was not error. See also Maddox v. State,

20 Ala.App. 497, 103 So. 99; Savage v. State, 23 Ala.App. 372, 125 So. 790; Shouse v. State, 36 Ala.App. 614, 63 So.2d 722.

Appellant's next contentions are that the court erred in "admitting the confession of the defendant after knowledge of the fact that counsel had been employed for him" and in admitting the confession of the defendant without proof that it was wholly voluntary.

We have made a diligent search of the entire record and fail to find therein any evidence which we construe as a confession by the appellant.

We find no errors in this record and the judgment in this cause is, therefore due to be and the same is hereby

Affirmed.