[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 319 
The appellant, Terry Simpson, was indicted by the Grand Jury of DeKalb County in December 1974 for buying, receiving and concealing stolen property. On November 3, 1975, prior to the impaneling of a jury, the case was nol-prossed at the request of the State, without leave of court to reindict the defendant. In January 1976, Simpson was reindicted for the same offense. In February 1977, Simpson was convicted by a jury for buying, receiving or concealing stolen property and sentenced to three years incarceration.
This case arose from the disappearance of thousands of bricks from Jenkins Brick Sales in Birmingham, Alabama, a subsidiary of Jenkins Brick Company, Inc., located in Montgomery, Alabama. In order to track down the missing bricks, James M. Speigner, a salesman for Jenkins, was told by his superiors to observe all construction sites in his sales territory. Whenever he came upon a site using Jenkins brick, he inquired to make sure the brick had been properly purchased.
On September 27, 1974, Speigner was in Sylvania, DeKalb County, Alabama. At the office and residence of appellant, Speigner found 8,000 dark brown Williamsburg bricks, a distinctive brick manufactured by Jenkins. Appellant told Speigner he had shipped 22,000 of the same kind of brick to a local job site. Speigner then stated that according to his company records, Jenkins had sold appellant only 21,000 dark brown Williamsburg bricks. When Speigner asked for an explanation of the existence of the bricks for which Jenkins had no record of sale, appellant first responded that it was none of Speigner's business. However, after Speigner called his home office and the DeKalb County sheriff, appellant told Speigner he knew the bricks had been stolen, *Page 320 
but could not reveal the identity of the person or persons who had sold him the bricks because he feared for his life. Later that day, by telephone, appellant told Mr. Charles B. Young, Jenkins' executive vice president, that the unaccounted for bricks were stolen, but again refused to reveal the identity of the thief.
Sometime later, Mr. Young met appellant at a cafe in Cordova, Alabama. At that time, appellant said a man named Wally Finch sold him the bricks which he picked up from behind an abandoned service station and left $150.00 in a jar. Young testified that appellant later changed his story again and said he bought the Jenkins bricks from a disinterested party in Anniston.
 I
Prior to trial, counsel for appellant filed a pleading entitled "Plea in Abatement," in which he alleged that the grand jury which returned the 1976 indictment was not properly constituted. However, the bulk of the pleading dealt with thenolle prosequi of the 1974 indictment without leave to reindict the defendant and alleged that the offense charged in the indictment was therefore "res judicata," which we take to mean former jeopardy. The State responded with a pleading entitled "Motion to Strike Defendant's Plea in Abatement," which alleged that the 1974 indictment had been nol-prossed because of a misnomer of the Jenkins Brick Company and stated appellant had "shown no evidence of res judicata." After hearing argument of counsel on the plea in abatement and the motion to strike, off the record and out of the presence of the jury, the trial court granted the State's motion to strike. Appellant claims the trial court erred by not allowing the question of his former jeopardy to be tried by the jury. The State contends that a plea in abatement is not the proper way to raise former jeopardy.
It has long been the law in Alabama that the issue of former jeopardy must be raised by special plea. DeArman v. State,77 Ala. 10 (1884); Rickles v. State, 68 Ala. 538 (1881); Stewardv. State, 55 Ala. App. 238, 314 So.2d 313, cert. denied 294 Ala. 201, 314 So.2d 317 (1975). We think appellant complied with this requirement. Although his pleading was entitled "Plea in Abatement," and although one count challenged the grand jury, nevertheless the substance of the pleading clearly raised a former jeopardy issue based on the nolle prosequi of the first indictment. Title 15, § 282, Code of Alabama 1940 (Recompiled 1958) provides:
 "In criminal proceedings, a plea is to be determined according to its substance, and not by its commencement or conclusion."
That the pleading was entitled "Plea in Abatement" rather than "Plea of Former Jeopardy" does not make the plea invalid.
Appellant is correct in his contention that the question of his former jeopardy should have been submitted to a jury.Parsons v. State, 179 Ala. 23, 60 So. 864 (1913); Garsed v.State, 50 Ala. App. 312, 278 So.2d 761 (1973). However, the trial court's error in determining the former jeopardy issue itself, rather than submitting it to the jury, is not reversible error where there is no injury to the defendant.Racine v. State, 291 Ala. 684, 286 So.2d 896 (1973); Kilpatrickv. State, 46 Ala. App. 290, 241 So.2d 132 (1970). Here, appellant was not prejudiced by the trial court's action because his claim of former jeopardy was unfounded.
The basis of appellant's claim of former jeopardy was thenolle prosequi of the first indictment against him. His theory appears to be that a nolle prosequi constitutes an acquittal of the person indicted, and thus he cannot be brought to a second trial. We disagree.
When the 1974 indictment was nol-prossed, appellant had not yet been put in jeopardy. In Alabama, jeopardy attaches when a jury has been charged with the trial of a defendant, i.e. when the jury has been impaneled and sworn in a court of competent jurisdiction, the defendant has pled to the indictment, and the indictment has been read to the jury. Boswell v. State, *Page 321 290 Ala. 349, 276 So.2d 592 (1973), cert. denied 414 U.S. 1118,94 S.Ct. 855, 38 L.Ed.2d 747 (1974); Spencer v. State,48 Ala. App. 646, 266 So.2d 902 (1972); Garsed v. State, supra. Thenolle prosequi of an indictment is not exempt from this general rule. In Whitaker v. State, 21 Ala. App. 114, 115, 105 So. 433,434 (1925) the Court of Appeals stated:
 ". . . When a nol. pros. is entered before the defendant has been placed in jeopardy, its only effect is to end that particular prosecution, and does not absolve defendant from liability to further prosecution for the same offense . . ."
 II
Appellant contends that the State failed to prove that the bricks specified in the indictment had been stolen rather than embezzled.
The law in Alabama is that, ". . . before one can be convicted for receiving or concealing stolen property, it must be shown by the required measure of proof that the property in question was stolen." Coates v. State, 36 Ala. App. 371, 373,56 So.2d 383, 384 (1952). However, the State is not limited to eyewitness testimony in proving larceny.
The State may prove the elements of the offense in question by circumstantial evidence. The jury then determines whether the offense was committed. In Tyler v. State, 17 Ala. App. 495,496, 86 So. 93, 94 (1920) the court said:
 ". . . All of these necessary ingredients may be, and most of them usually are, shown by circumstantial evidence, from which the jury, using their everyday common sense and observation, must draw their conclusions."
The same court stated in Wright v. State, 17 Ala. App. 621, 622,88 So. 185, 186 (1920):
 ". . . We are not unmindful that the corpus delicti may be proved by circumstantial evidence, and if the evidence adduced affords an inference that a larceny has been committed the question of its sufficiency is for the jury. . . ."
Evidence that the property listed in the indictment disappeared from the owner's premises without the owner's knowledge or consent has been held sufficient for the jury to infer that the property was stolen. Smitherman v. State, Ala.Cr.App.,340 So.2d 896, cert. denied 340 So.2d 900 (Ala. 1976); Scott v.State, 55 Ala. App. 318, 314 So.2d 921 (1975); Tanner v. State,37 Ala. App. 256, 66 So.2d 827 (1952) (cert. granted 259 Ala. 306, 66 So.2d 836 (1953) reversed on other grounds).
Here the fact that several thousand bricks had disappeared from Jenkins Brick Sales in Birmingham was undisputed; appellant himself testified to that. It is clear from the testimony of Speigner and Young that the bricks were taken without the knowledge and consent of the company and that the company considered the bricks to have been stolen rather than embezzled. Furthermore, both men testified that the appellant admitted having knowledge that the bricks were stolen. Thus, there was ample evidence from which the jury could infer that the bricks were stolen property at the time they came into appellant's possession. Since there was ample evidence to support a finding by the jury that the property was indeed stolen, there must also be evidence that the appellant possessed the bricks, knowing them to have been stolen or having reason to believe they had been stolen. The fact that the appellant admitted to both Speigner and Young that he knew the bricks were stolen was sufficient to supply the latter element of the offense.
 III
During closing arguments, counsel for appellant made the following objection which was overruled by the trial court:
 "If the Court please, we object to the argument that maybe, perhaps he bought and received and concealed many more thousand than alleged in the indictment. It's highly improper and an attempt to get the jury to act on speculation on something that there's no evidence whatsoever."
There is no evidence in the record that appellant ever had any contact with stolen bricks other than the bricks in question, nor *Page 322 
could such an inference be drawn. Here, we must first determine whether the district attorney's remarks were improper, and secondly whether the trial court reversibly erred in overruling the objection to the remarks.
In determining whether comments made by the prosecution during closing arguments are improper, the general rule is that counsel may not state as fact that which is prejudicial to the defendant and of which there is no competent evidence. Smith v.State, 282 Ala. 268, 210 So.2d 826 (1968); Rogers v. State,275 Ala. 588, 157 So.2d 13 (1963); Harris v. State, Ala.Cr.App.,333 So.2d 894 (1976).
 ". . . The statement must be made as of fact; the fact stated must be unsupported by any evidence, must be pertinent to the issue, or its natural tendency must be to influence the finding of the jury. . . . We would not embarrass free discussion, or regard the many hasty or exaggerated statements counsel often make in the heat of debate, which can not, and are not expected to become, factors in the formation of the verdict. Such statements are usually valued at their true worth, and have no tendency to mislead. It is only when the statement is of a substantive, outside fact — stated as fact — and which manifestly bears on a material inquiry before the jury, that the court can interfere, and arrest discussion. . . ."
Cross v. State, 68 Ala. 476, 484 (1881).
The prosecutor's statement clearly was not supported by the evidence or any inference from the evidence. The question here is whether the statement was made as fact, or whether it was only a hasty or exaggerated statement made in the heat of debate, taken by the jury as such, and having no tendency to mislead.
The prosecutor prefaced his statement by saying "maybe, perhaps," thus taking the statement out of the realm of fact and stating only a speculation on his part. It is probable that the jury took this statement as no more than that and was not misled to believe appellant had in fact dealt with other stolen bricks. However, we do not condone that sort of remark in closing argument. It in no way aids the jury in determining the facts already in evidence, and it does seek to prejudice the jury against the defendant.
There is no uniform legal standard by which to review the prejudicial effect of improper remarks made by the prosecutor during trial. Each case must be reviewed on its own merits.Beckley v. State, Ala.Cr.App., 335 So.2d 244 (1976); Atchisonv. State, Ala.Cr.App., 331 So.2d 804, cert. denied331 So.2d 806 (Ala. 1976). Much discretion is left to the trial court in determining whether the statement is prejudicial to the defendant. Garrett v. State, 268 Ala. 299, 105 So.2d 541
(1958); Bullard v. State, 40 Ala. App. 641, 120 So.2d 580
(1960); Tooson v. State, 56 Ala. App. 613, 324 So.2d 327, cert. denied 295 Ala. 426, 324 So.2d 333 (1975). From our review of the record, we do not find that the district attorney's statement, although improper, was prejudicial to appellant or that the trial court's action in overruling his objection was reversible. Scroggins v. State, Ala.Cr.App., 341 So.2d 967
(1976); Ballard v. State, 51 Ala. App. 393, 286 So.2d 68, cert. denied 291 Ala. 772, 286 So.2d 72 (1973).
 IV
Appellant next alleges that the jury was permitted to separate and that the State failed to meet its burden of affirmatively showing that the jurors were not subjected to contacts which might have influenced their verdict. He also complains that one of the bailiffs was not shown to have taken an oath of office.
The jury was sequestered overnight in a local motel; the women stayed in one wing and the men in another. Apparently the jurors were in separate rooms; the bailiffs also were in separate rooms. At the hearing held on appellant's motion for a new trial, he neither alleged nor attempted to show that any juror had left the motel, thus causing a separation, or that anyone contacted or attempted to contact, a juror. From all that appears in the record, the jury remained sequestered during the entire period of the trial. *Page 323 
Appellant relies on the following "well-settled rules:"
 ". . . First, during the trial of a felony the jury is to be kept together; Second, if the jury does separate, that fact is, prima facie, error to reversal; and Third, to overcome this presumption of error, the State has the onus of establishing that the separated juror or jurors were not subject to influence or contacts which might have swayed them in reaching the verdict.
 "We use `might' to reflect the test of vitiating influence laid down in Roan v. State, 225 Ala. 428, 143 So. 454 (26), i.e. `not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others * * *.' See Oliver v. State, 232 Ala. 5, 166 So. 615."
 Lee v. State, 47 Ala. App. 548, 550, 258 So.2d 743,745 (1972).
Mitchell v. State, 244 Ala. 503, 14 So.2d 132 (1943); Pitts v.State, 53 Ala. App. 373, 300 So.2d 416 (1974).
Appellant, in his brief, argues:
 ". . . The State made absolutely no effort to show that the jurors even remained in the motel overnight, much less show that they did not go home, attend a horse show, appear at a rally of some subversive organization during the night, or confer with Cooper or Speigner. The Defendant did not have to show that these things happened, and that injury resulted to him therefrom, he has shown all this is necessary, that anything could have happened that night. . . ."
We think the appellant is mistaken on this point. In our opinion, the fact that jurors are housed in separate rooms in a hotel or motel overnight does not amount to an improper and illegal "separation" of the jury. The law must be workable. We know of no law requiring all jurors, male and female, to be housed overnight all together in one room. The record fails to reveal any "separation" of the jury in the legal sense of the word, and neither is there a hint of any outside influence on or contact with the jury. (See: § 12-16-10; Code of Ala. 1975).
Relying on Arnett v. State, 225 Ala. 8, 141 So. 699 (1932) appellant also says that it was reversible error for the trial court to permit the jury to leave the court escorted by an unsworn officer of the court. However, the court in Arnett did not hold that an officer in charge of a jury during sequestration must be a sworn bailiff or deputy sheriff. Rather, the court stated:
 ". . . while it is advisable that he shall be such, we do not think it is absolutely necessary that he be sworn."
(225 Ala., at 9, 141 So., at 700).
Thus, no error occurred.
 V
Six witnesses testified for appellant regarding his reputation in the community for good character. The trial court refused two written charges requested by appellant pertaining to the effect of proof of good character. The trial court also failed to cover that subject in its oral charge to the jury, to which appellant duly excepted.
As stated in Kilpatrick v. State, 37 Ala. App. 165, 168,66 So.2d 441, 444, cert. denied 259 Ala. 212, 66 So.2d 445 (1953):
 "It is fundamental that upon proof of good character an accused is entitled to have the jury instructed as to the effect of this type of evidence when taken in connection with all the other evidence. . . ." (Citations omitted).
Where the trial judge omits from his oral charge, instruction as to the effect of good character evidence, the appellant is entitled, upon proper exception, to have the jury instructed on that subject, provided the appellant has supplied the court with a proper written charge. Smith v. State, 262 Ala. 584,80 So.2d 307 (1955). Justice Bloodworth in a concurring opinion inState v. Burns, 295 Ala. 423, 327 So.2d 927 (1976) cited Smith
and stated:
 ". . . The Supreme Court of Alabama has never reversed a trial judge, to my knowledge, for failing to instruct. When a trial judge's instructions are not as full as defendant's counsel desires, the remedy is to request instructions explaining defendant's theory of the case . . ." *Page 324 
The appellant had presented the trial judge with two written requested charges concerning evidence of good character, both of which were refused. Charge No. 11 was as follows:
 "I charge you, ladies and gentlemen of the jury, that good character, if proven, when taken in connection with the whole evidence may have the effect to generate such a doubt as to authorize an acquittal even when the jury would otherwise entertain no doubt."
Charge No. 13 was:
 "I charge you, ladies and gentlemen of the jury, that evidence of good character of the defendant can be sufficient to create a reasonable doubt as to the guilt of the defendant, and if such reasonable doubt
 is established in the minds of a single juror, you must acquit the defendant."
Refused Charge No. 11 is identical to a charge set out in Wattsv. State, 177 Ala. 24, 59 So. 270 (1912). There, the Supreme Court of Alabama held that refusal to give such a charge was error. The Court of Appeals followed Watts in a line of cases down through 1945 when it decided Beavers v. State, 32 Ala. App. 223, 23 So.2d 602. In that case, reversal resulted in the trial court's refusal to give the following charge: "The court charges the jury that proof of good character, if proved to your reasonable satisfaction, may be sufficient to authorize you to acquit the defendant when taken in connection with all the other testimony."
Although there was some difference in wording between the charge in Beavers and that set out in Watts, the Court of Appeals stated: ". . . the charges mentioned are in substance the same." The Supreme Court reversed the Court of Appeals inBeavers v. State, 247 Ala. 181, 23 So.2d 604 (1945) holding that such a charge was misleading and that the trial court was not in error in refusing to give it to the jury.
The Court of Appeals later reviewed a somewhat similar charge and held it to be good in Kilpatrick v. State, 37 Ala. App. 165,66 So.2d 441 (1953). In that case the Court of Appeals went to great length to distinguish the refused charge there from the one in Beavers. However, the charge approved in Kilpatrick is predicated upon good character (in connection with all the evidence) generating a reasonable doubt. The instant charge does not refer to reasonable doubt. Therefore, we conclude thatBeavers, supra, controls and that the trial court was not in error for refusing the appellant's Requested Charge No. 11 in the instant case.
Charge No. 13 was properly refused because, among other reasons, it did not require that evidence of good character be considered with the other evidence in the case. Such a charge would tend to mislead the jury to believe that good character evidence alone was sufficient to create reasonable doubt of guilt. The law is otherwise. Johnson v. State, 94 Ala. 35,10 So. 667 (1891); Smith v. State, 44 Ala. App. 96, 203 So.2d 279
(1967); Henderson v. State, 15 Ala. App. 1, 72 So. 590 (1916); 6A, Alabama Digest, Criminal Law, 776 (1)-(5).
The remaining grounds relied upon by the appellant for reversal have been considered in light of the record, briefs and argument of counsel, and we find that no reversible error has been shown. It is the opinion of this court that the rulings of the trial court, challenged by the appellant, did not, on the record and under the law, constitute harmful error.
AFFIRMED.
All the Judges concur.