14 So.2d 739

**KITCHENS v. STATE.**

7 Div. 727.

Court of Appeals of Alabama.
June 30, 1943.

Rehearing Denied Aug. 10, 1943.

Roberts & Cunningham, of Gadsden, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

SIMPSON, Judge.

The appeal is from a conviction of manslaughter in the first degree.

The State's evidence established that the defendant made an unprovoked assault on the deceased, knocked him down, and then kicked him several times about the head and body.

The trial court, in defining manslaughter, correctly instructed the jury that "in manslaughter in the first degree, there must be either a positive intention to kill, or an act of violence (from) which, ordinarily, in the usual course of events, death or great bodily harm may ensue."

Reynolds v. State, 24 Ala.App. 249, 134 So. 815; Harrington v. State, 83 Ala. 9, 36 So. 425.

Under the conflicting evidence adduced, it was for the jury to determine the question of guilt and the degree of the homicide. Diamond v. State, 219 Ala. 674, 123 So. 55; Oliver v. State, 234 Ala. 460, 175 So. 305.

The proposition for our decision—and the only matter urged for revision by learned counsel—is as to the qualifications, vel non, of Dr. C. J. Rehling, of the State Toxicological Department, to give expert testimony in the case. That is, whether or not the trial court erred in permitting said witness to testify (over objection and exception of·defendant) as to the result of an autopsy performed upon the body of the. deceased, his findings and conclusions.

Following is the testimony presented to sustain the witness's qualifications (by Dr. Rehling):

"I am connected with the State Toxicologists Department and have been about five years. I received a Bachelor's degree in Chemistry from Auburn, 1929; Master's degree from the same institution, 1933 in chemistry, and doctorate from the University of Wisconsin in 1939. That degree was taken in chemistry, in bio-chemistry, and other biological sciences. Prior to 39 and since 39, I have been with the State Department of Toxicology. I am Senior Toxicologist of the State Department, and Director of its laboratories, and as part of my duties there hold post mortems; and so forth, over the State, when requested, and about July 21st of this year * * * I went to the Brown-Service Funeral Home, here in Gadsden and saw the dead body of William L. Butler there. ·* * * I have performed a number of post mortems, and have handed whole and parts of several hundred human bodies. * * * I did perform an autopsy on the body of William L. Butler."

"The Court: * * * Your occupation has ·to do with the matter of determining causes of death * * *? A. Yes. * * * (My) training has covered a number of branches of science that have centered largely around biochemistry, which is the function of the human body essentially, and it is made up (its make up), and my duties in that department are the practice of that profession."

"Mr. Roberts (of counsel for defendant): Are you a licensed physician?

"Witness: I am not.

"Mr. Roberts: You never have practiced medicine?

"The Witness: No.

"Mr. Roberts: You don't know anything about the practice of medicine?

"The Witness: Yes, I know something about it.

"Mr. Roberts: Well, you say you are not a licensed doctor?

"The Witness: That is right.

"Mr. Roberts: Have you completed any accredited medical college for the general practice of medicine?

"The Witness: No."

The trial court ruled the witness to possess sufficient qualifications to state the result of the "cranial post mortem" performed by him upon the body of the deceased and what his "findings" were in regard thereto.

After having been permitted to detail the autopsical findings, the following appears to have been transacted:

"Q. Now, Doctor, from that condition of that skull there, in your opinion, could that condition be caused by a blow or blows on the head?

"The Defendant objected to the question on the ground that it was incompetent, irrelevant, immaterial and illegal. The Court overruled the objection, to which ruling of the Court the Defendant then and there duly excepted.

"Continuing the witness testified:

"The bruise and fracture which I have described as being found on the left back of the head is the result of a blow, one or more, by some blunt object, to that area of the head. And that blow by the blunt instrument—a blow by a blunt instrument—caused a brain hemorrhage, and it resulted in the death of this man, in my opinion."

It is argued by appellant's counsel that there was error in the foregoing action of the court in permitting the doctor to so testify, because he was not a medical doctor and, allegedly, was lacking in qualifications to give the foregoing expert observations. It is the opinion and judgment of this court that this contention is not sustainable.

It was said by this court in Wilson v. State, ante, p. 21, 11 So.2d 563, 565, in approving the qualifications of another official of the toxicological department:

"The criterion for admission of expert testimony is that the witness, by study, practice, experience or observation as to the particular subject, should have acquired a knowledge beyond that of ordinary witnesses. 6 Ala.Dig., Criminal Law, ☞478. [This, the witness clearly appears to have accomplished.]

"And whether a witness is shown to possess the requisite qualifications is a preliminary question largely within the discretion of the court. Mathis v. State, 15 Ala.App. 245, 248, 73 So. 122; Barlew v. State, 5 Ala.App. 290, 57 So. 601, certiorari denied Ex parte Barlew, 181 Ala. 88, 61 So. 912."

A good statement of the rule, particularly apposite here, is found in Underhill's Criminal Evidence (Niblack), 4th Ed., § 236, pp. 441–443, to-wit: "The range of such examination (of experts), and the question of the admissibility of such testimony, is addressed to the sound discretion of the court. * * * Actual experience is not necessary to qualify as an expert, but actual knowledge is necessary so to qualify. Experts may be qualified by experience rather than study or by study rather than experience. Objection to expert witness on the ground of lack of knowledge goes to the weight rather than to the admissibility of the testimony. The test in determining the qualifications of an expert is whether his knowledge may aid the jury. To qualify as an expert a witness does not have to be shown to be infallible or possessing the highest degree of skill."

It is also declared that "the nature of a wound or injury, its probable cause and effect, may be shown by expert medical witnesses or witnesses shown to be familiar with such questions, such as a sheriff, undertaker, a trainer of wrestlers or boxers or others showing competency." Underhill, supra, § 241, p. 454.

See, also, 11 R.C.L., p. 574, § 8; 20 Am. Jur., p. 656 et seq., §§ 783–786; 32 C.J.S., Evidence, p. 95 et seq., §§ 457, 458.

Our opinion is, and we so hold, in the light of the recognized standards above, that Dr. Rehling was shown to have possessed the requisite qualifications to give the testimony adduced.

The whole case reviewed and carefully considered, it is our conclusion that the judgment should be affirmed.

Affirmed.