20 So.2d 881

**ROWLAND v. STATE.**

**1 Div. 487.**

Court of Appeals of Alabama.

Feb. 13, 1945.

W. C. Taylor, of Mobile, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

While the indictment in this case charged this appellant separately with the crime of rape, yet the record discloses that two other persons were likewise indicted separately charged with the same offense at the same time and place upon the same prosecutrix. The other two persons

thus indicted were Frank alias Jimmy Bartlett, and Jack White. It also appears that the said Bartlett was first tried, on the day before the case at bar was tried.

■ The transcript of the testimony discloses when the trial of this case was entered upon, the Solicitor made an "opening statement," and in this connection stated (as shown by the transcript), "This defendant is charged with rape, with the same crime with which Frank, alias Jimmy Bartlett is charged."

Defendant's counsel stated: "I object to anything with reference to Jimmy Bartlett."

The court stated: "I will strike what he has just said, but will let him state what is a fact." Exception was duly reserved to this utterance by the court. "Solicitor further stated: 'Each and every one of them raped her.'" Defendant objected: "I object to that statement and move to strike it." The court stated: "Overrule the objection and deny the motion." Exception was duly reserved.

We see no escape from holding the above rulings of the court to be error. As will be noted, there was no statement by the Solicitor to the effect that the State expected to offer evidence tending to show that this defendant committed the act charged in the indictment, to the contrary by said rulings, the Solicitor was permitted to state as a fact that the defendant raped the alleged injured person, the very and only issue the jury were called upon to determine and decide. This the law does not permit.

■ The object and purpose of an "opening statement" in advance of taking testimony, is to acquaint the jury with the nature of the issues presented. This may include an outline of the evidence proposed to be offered in support of said issues, but it has never been contemplated or allowed that an emphatic statement by a Solicitor, of his own knowledge could be made to the effect that the defendant is actually guilty of the crime charged in the indictment.

This case is of grave importance, and in order that it may be clearly understood we quote at length the material portion of the testimony adduced upon the trial. The State relied solely upon the testimony of the prosecutrix as to the facts, for a conviction. There is no dispute or conflict in the evidence as to principals having had sexual intercourse with each other at the

time and place designated. The defendant strenuously insists and so testified the act was committed by and with the full consent of the woman in question. She, however, testified she did not consent to the act. This issue of fact was the only question for the jury's consideration and determination.

As to the salient facts the record discloses, among other things, that appellant was charged with rape on Eunice Lindsey on November 30, 1943, however, a warrant was not sworn to until December 8, 1943, and no complaint was immediately made by prosecutrix. On the night of November 30, 1943, which was Tuesday, defendant was at Whistler, Alabama, at the community house, which is located about 8 miles north of Mobile, Alabama, and the prosecutrix came there to the dance alone after she had left her place of employment at Woolworth's Department Store in Mobile, at 6:30 p.m. in the afternoon, but stopped at a show before she arrived at the dance hall, where the defendant was on said date. She was not acquainted with defendant and only knew one boy, by the name of "Jimmie" (Jimmie Bartlett), who along with Jack White was, as stated, also indicted for rape of the prosecutrix on the same date and at the same place. Prosecutrix had been knowing Jimmie for some months, having met him previously at the dances she attended at this place.

About 11:30 on the night of November 30, 1943, just before the dance ended, she got into the car with this man, Jimmie, Jack White and this defendant, and they left the dance hall with Jack White driving the car. The defendant was on the front seat with White. The prosecutrix and Bartlett were on the back seat. White drove the car to a spot where he parked and Bartlett told the defendant and White to get out of the car, which they did and walked back behind the car a way. Later they came back to the car and the prosecutrix said, as testified to by defendant, "What the hell do you want?", and defendant stated, in effect, that he wanted to have relations with her also. Prosecutrix answered, "All of you want it?", and the defendant did have relations with prosecutrix on the front seat of the car with her consent. The defendant then got out of the car and Jack White got into the car, where the prosecutrix was and had remained since she left the dance hall. White

later got out of the car, after he had had relations with prosecutrix, according to her statement. There was no fight or struggle, no noise or commotion, and she made no complaint or indication of any dissatisfaction whatever about what had happened, according to defendant's testimony. However, prosecutrix said she resisted. Then the three men got into the car with prosecutrix, and she had her arms around the defendant and Jimmie on the way back, while they three were riding in the front seat of the car (as to this there is no conflict in the testimony), Jack White in the rear seat alone. Jimmie Bartlett was then driving, and drove the prosecutrix within four doors of the home of her aunt where the prosecutrix wanted to go, and let her out of the car at this point.

Upon cross examination of prosecutrix she stated:

"After he got through Jimmy got out of the car and I tried to get out.

"Q. Then he threw you a handkerchief and you threw it back to him? Ans. Yes, and then I got out of the car but didn't stay out.

"Q. What about this ten dollars you asked them for? Ans. He didn't offer me no ten dollars, but he said he would give me some money."

By numerous witnesses the defendant proved that his character was good. Nearly all of these character witnesses testified they had known the defendant nearly all of his life. This testimony as to the good character of defendant was without dispute or conflict.

As has been stated, and also to be noted, the testimony of the prosecutrix and that of the accused was in direct and irreconcilable conflict. As to the testimony of the woman, it was without support from any source except, as stated, the unauthorized authoritative and emphatic statement of the Solicitor that "all three of them raped her." In the absence of this statement made to the jury, it is highly probable that a different verdict may have been returned.

The office of Solicitor is of the highest importance; he is the representative of the State, and as a result of the important functions devolving upon him as such officer necessarily holds and wields great power and influence, and as a consequence erroneous insistences and prejudicial conduct upon his part tend to unduly prejudice and bias the jury against the defendant.

In our case of Jones v. State, 21 Ala. App. 505, 109 So. 564, 566, this court said: "Solicitors should realize that they occupy very high, honorable, important, and powerful political positions in the administration of justice. To discharge the duties of this office there should ever be kept in mind the 'majesty of the law' which prosecutes within the rules laid down, but which never resorts to impassioned appeals, forensic ability, or personal magnetism to obtain conviction of those charged with crime."

 As to the defendant, as has been repeatedly held, he was presumed by law to be innocent. This presumption, evidentiary in its nature, attended him throughout the entire trial and until overcome by legal evidence of sufficient force and character to convince the jury beyond all reasonable doubt and to a moral certainty that he was guilty of the offense charged. A duty devolves upon the jury, if it can be done, to place that construction upon the evidence which makes all witnesses speak the truth. Here, as stated, there was conflict in the testimony of the two principals involved, who were the only witnesses as to the facts. On the trial of any criminal charge, the jury should not, for it is not authorized so to do, capriciously set aside and refuse to consider the testimony of the defendant and that of his witnesses. He is entitled to a fair and impartial trial, free from prejudicial error or hurtful influences.

 In addition to the axiomatic presumption of innocence, above discussed, the defendant was supported also by the fact that the undisputed testimony disclosed he was a man of good character, and, as stated, by the able and distinguished jurist who tried this case, in the oral charge to the jury: "In support of defendant's statement he offers testimony of his good character. The law is that good character when taken together with the other evidence in the case heard from the witness stand may be sufficient to generate in your minds a reasonable doubt."

In addition to the foregoing, which is a correct statement of law, the trial court, at the request of defendant, gave the following written charges on this same question:

608

"16. The court charges the jury that proof of good character if proved to your reasonable satisfaction, may be sufficient to authorize you to acquit the defendant when taken in connection with all the other testimony."

"25. The court charges the jury that good character itself may, in connection with all the evidence, generate a reasonable doubt and entitle the defendant to an acquittal, even though without such proof of good character you would convict."

"22. The court charges the jury that in all criminal cases under the law of our land, every man on trial has the right to offer his standing in the community before the jury, not for the purpose of disproving that he did not do a thing or that he did do a thing, but if he can show a good reputation, it is for the jury to look at that reputation in connection with all the rest of the evidence to say whether or not a man of such standing would have done the thing he is charged with having done; and, if after considering all the testimony, the jury is of the opinion or have a reasonable doubt as to whether a man would do what he is charged with having done, bearing a good reputation, if the jury believe that has been established, then that may be sufficient to generate a reasonable doubt, but you do not acquit by reason of a good reputation that a man has established, but by reason of a reasonable doubt engendered by having established a good reputation."

"29. The court charges the jury that the legal presumption of innocence is to be regarded by the jury in every case as a matter of evidence, to the benefit of which the accused is entitled; and, as a matter of evidence, it attends the accused until his guilt, is by evidence, placed beyond a reasonable doubt."

█ The refusal by the trial court of special written charge No. 9 is insisted upon as error. Said charge is as follows: "The court charges the jury that if you find from the evidence that Eunice Lindsey has sworn falsely in any material part of the evidence, then you may disregard all of her evidence." This insistence is without merit. The law requires that the false swearing of a witness must be willful to justify the jury in disregarding the testimony of a witness.

From what has been said, and the quoted testimony, we perforce must hold that the trial court erred also in overruling and denying defendant's motion for a new trial. Several grounds of the motion were well taken in our opinion.

Numerous other insistences of error are made. We see no necessity of prolonging this opinion and refrain from so doing.

The judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.