192 So.2d 736

**Brady ULDRIC**

v.

**STATE.**

**5 Div. 666.**

Court of Appeals of Alabama.

Oct. 11, 1966.

Rehearing Denied Nov. 15, 1966.

J. Noel Baker, Opelika, for appellant.

Richmond M. Flowers, Atty. Gen., and Julian S. Pinkston, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

The indictment charged murder in the first degree. The jury returned a verdict of manslaughter in the first degree, with a penitentiary sentence of five years.

The undisputed evidence is that appellant, Brady Uldric, killed Winford Shockley by shooting him with a pistol. The homicide occurred at a tavern owned and operated by defendant. The state's only eye-witness to the shooting testified that deceased sat down at the bar and ordered a beer. Shortly thereafter defendant came from behind the bar and stood by deceased and they conversed in low tones. "In a few minutes Brady * * * pulled him off the stool and shoved him all the way out the door * * *. (A distance of twelve feet or a little farther.) When he shoved him out the door he fell on the ground, and Brady had a pistol in his hand and he held his arm up and he pointed the pistol at him, and I screamed, 'Don't shoot him, Brady.' Well, Brady said, 'You S-O-B., I'll kill you,' and he shot him." When he fell deceased was facing away from the door, with his back toward witness. Deceased pulled himself off the ground by holding to the front of a car, grabbed himself like this (indicating) and said, "Oh, my God, you shot me."

A physician who treated deceased at the Langsdale Hospital testified the bullet entered the back of the right shoulder, ranged downward and toward the front part of the body, passed through the lung and liver, went in and out three or four separate openings in the small bowel, four separate openings in the colon and lodged in the pelvis. These wounds caused death.

A state toxicologist testified he performed a postmortem examination on the body of Winford Shockley after it was embalmed. He stated the bullet entrance wound was on the right shoulder, slightly to the top and slightly toward the back. It was five and a half inches from the center of the neck and three and a half inches below the top of the shoulder. The bullet ranged downward and slightly forward. He traced the bullet through the diaphragm where it penetrated the liver and several loops of the small intestines and the transverse colon.

A deputy sheriff of Lee County testified that he and another officer arrived at defendant's place of business on a routine check shortly after the shooting, at which time defendant told them he had just shot a man. While the officers were investigating the shooting, defendant drove up beside them at Murphy's place. Defendant asked if they had found a pistol and when told they had, said that made him feel a lot better. The officer testified, "I said, Brady, did you actually see the pistol?" De-

fendant answered, "No," and said he was too old and had too many scars and a bullet in him to wait. The pistol found in the glove compartment of deceased's truck was a .22.

Defendant's evidence was presented by himself and three of his employees. The tendency of their testimony was that earlier in the evening deceased came into defendant's place, operated a pinball machine for a short time with one of the waitresses, and left. He returned in about thirty minutes and asked another waitress to "shoot the pinball machine" with him. She agreed to play, and deceased said if he won the game she would have to give him a date. The waitress refused to play, but deceased insisted and told her he would jump over the counter after her. Defendant then ordered deceased to leave. Deceased cursed and invited defendant outside to settle the matter. The defendant and deceased walked toward the door and when they reached it defendant gave deceased a "little shove." Deceased turned and reached in his sock and took out a pistol, whereupon defendant shot him. Defendant denied telling the officers or anyone else that he didn't see deceased's pistol. He also testified he had previously been convicted for murder in Lee County.

Deceased's widow testified deceased was wearing very short, snug fitting nylon socks.

■ We see no necessity for detailing all of the evidence. The testimony of the state's witnesses tended to prove defendant guilty of murder in the first degree, while that of defendant and his witnesses tended to show he shot in self-defense. The defendant having admitted the killing, the question of whether he was justified in so doing was, under conflicting testimony, for the jury to determine. The evidence was sufficient to sustain the verdict. The motion for a new trial, on the ground that the verdict was contrary to the evidence, was properly refused.

Objections were sustained to the following questions propounded to the state toxicologist on cross examination:

"Q. I will ask you if it was possible, if it is possible, that the decedent was walking away from the pistol at the time that he was shot?"

"Q. Now, Mr. Purnell, do you, in your official capacity as a toxicologist for the State of Alabama have a judgment as to the position of deceased at the time that the bullet was fired?"

■ Objections were properly sustained to these questions. A witness, expert or non-expert, cannot give his opinion as to the position of the deceased at the time the fatal shot was fired. Crawford v. State, 262 Ala. 191, 78 So.2d 291.

■ The record discloses that defense counsel, during his closing argument, made the statement that deceased had a gun. Thereupon the widow of deceased, "while weeping profusely," cried out, "he did not, he did not have that gun." The following then occurred: By defense counsel: "If the Court please, I would request—

"THE COURT: Yes, everybody will have to remain quiet. No more of this. Gentlemen of the jury, you will pay no attention to that. Mr. Sheriff, ask the lady to remove herself from the courtroom. Gentlemen of the jury, you will pay no attention whatsoever to that as no part of this case, you will give no consideration whatsoever to it. Wait just a minute, Mr. Solicitor, take her on out. Gentlemen, that is no part of the case, and you will not let it affect your consideration of the testimony and evidence in this case whatsoever. It has nothing whatsoever to do with it, and you would be abusing your oath as a juror to let it affect you one way or the other. You may proceed, Mr. Maye.

"MR. MAYE: If the Court please, I have a motion I would like to make to the Court outside the presence of the jury."

The jury was excused from the room and counsel moved for a mistrial. The motion was denied, the jury was recalled and the court gave the following further instructions:

"Gentlemen of the jury, the Court told you that occurrence has nothing whatsoever to do with the trial of this case, and that you would abuse your oath if you should let it affect you one way or the other. Now, if any of you feel like it has affected you, why then I would like to know it at this time. Now, gentlemen, it has nothing whatsoever to do with case, so far as the evidence and testimony, and that's what you are bound by, as it was concluded yesterday afternoon, and if anything that has occurred here this morning is going to affect your verdict one way or the other, I want you to say so now; otherwise, we will proceed with this case. You would definitely be in violation of your oath if you should let such an occurrence affect your verdict in this case one way or the other. All right, you may proceed, Mr. Maye."

It is well settled that in situations such as is here presented much must be left to the sound discretion of the trial judge, he having had the opportunity of seeing and hearing all that transpired.

Howard v. State, 273 Ala. 544, 142 So.2d 685; Hanye v. State, 211 Ala. 555, 101 So. 108.

In the instant case the trial judge properly instructed and admonished the jury not to consider the outburst and we find no abuse of discretion in the denial of a mistrial nor in the overruling of the motion for a mistrial. Duff v. State, 40 Ala.App. 80, 111 So.2d 621. Cert. denied. 269 Ala. 696, 111 So.2d 627.

We find no reversible error in the record. The judgment is affirmed.

Affirmed.