286 So.2d 68

**Bernard Albert BALLARD**

v.

**STATE.**

**1 Div. 129.**

Court of Criminal Appeals of Alabama.

Sept. 25, 1973.

Rehearing Denied Oct. 16, 1973.

394

William J. Baxley, Atty. Gen., and Samuel L. Adams, Asst. Atty. Gen., for the State.

BILLY C. BURNEY, Circuit Judge.

The appellant in this case was convicted of murder in the first degree and sentenced to life imprisonment.

I

Thomas M. Haas, J. D. Quinlivan, Jr., Mobile, for appellant.

Appellant was indicted by the Mobile Grand Jury in its September Session, 1968. Appellant waived arraignment, entered a plea of not guilty and reserved the right to file special pleas within fifteen days, which the Court below granted. On March 20, 1969, appellant entered written pleas of not guilty and not guilty by reason of insanity.

On April 14, 1970, appellant's attorney filed three motions: (1) a motion to suppress, (2) a motion to produce, and (3) a motion for a mental examination. After hearing each of these motions, the trial court denied the motion to suppress; granted the motion to produce as to all physical items, with the exception of the

District Attorney's file; and denied the motion for a mental examination.

On the motion to suppress, evidence was offered to show that, on the night of October 6, 1968, Marsha Patronis, the deceased in this case, was last seen alive by her mother around 6:45 or 7:00 p. m., at which time her mother was leaving their home; that, when her mother returned some time later, her daughter was not there and did not return that night. Marsha Patronis's mother reported the fact that her daughter was missing to the Mobile County Sheriff's office. The evidence further shows that the Bayou La Batre Police Department was making inquiries as to the whereabouts of the Patronis girl. It was further established that on the night Marsha Patronis was missing, Bernard Ballard, the appellant, reported to the Bayou La Batre Police Department that someone had stolen his pocket knife from the ash tray of his automobile. It was also shown that on the night the Patronis girl was missing, Ballard was seen at a service station in Bayou La Batre with a girl.

George Crawford, Chief of Police at Bayou La Batre, Alabama, testified that on October 10, 1968, he was at the police station in Bayou La Batre, and that the appellant came to the police station and inquired if it were true that the body of the Patronis girl had been found; he was told that she had been found; also present were Sheriff Bridges of Mobile County and Investigator Tom Deas. At this point Ballard was told by Chief Crawford that Investigator Deas wanted to see him.

Mr. Deas testified he met Ballard outside the police station in Bayou La Batre and asked Ballard to go into the Chief's office where they could talk. Deas further testified he did not, nor did anyone in his presence, offer Ballard any reward or hope thereof, nor hope of immunity for any statement, nor were there any threats to do violence to Ballard's person; that his rights under Miranda were explained to him; and that he subsequently signed a waiver of his rights, which was introduced into evidence. After being advised of his rights, Mr. Deas stated Ballard told him that on the night Marsha Patronis disappeared he saw her in Bayou La Batre and picked her up. He further stated they drove around while looking for the Patronis girl's boyfriend, but could not find him, and he (Ballard) later dropped her off in Bayou La Batre.

During the time Ballard and Deas were talking, Pete Patronis, a deputy sheriff on the Mobile County Sheriff's Department and also an uncle of the victim, came into the room. At this point Ballard asked to see Deputy Patronis alone, and Investigator Deas left the office.

Pete Patronis testified that Ballard asked to talk to him and while they were alone, Ballard was not threatened in any way, nor was he offered any reward or hope thereof. Patronis further testified that, while talking with appellant, Ballard admitted killing the Patronis girl.

While Deputy Patronis and appellant were still in the room, Curtis Roensch, an officer with the Bayou La Batre Police Department, came in. He stated that, at this time Deputy Patronis went outside to confer with someone and while he was gone, Ballard stated to him he had killed the Patronis girl. Appellant asked him if he wanted the knife he used to do it. Roensch stated he did, and Ballard gave him the knife.

At this time Ballard was told he was being charged with murder in the first degree and would be carried to the Mobile County Jail.

The officers and Ballard arrived at the County Jail sometime around 8:30 p. m., and the investigation continued. While at the County Jail, Carl Booth, District Attorney, came in, asked the appellant if his rights had been explained to him, and the appellant said yes; Mr. Booth then testified he looked over the waiver appellant had signed and it was in order. Mr. Booth further testified that during this time or shortly thereafter someone on the Sheriff's

staff came into the room and stated that an attorney had called the station, stating he was going to represent the appellant, and would be at the jail shortly. Mr. Booth stated he then instructed the officers conducting the investigation not to talk with appellant anymore until his attorney arrived; that appellant had made his confession orally before the initial contact of Ballard's attorney; and that they did not talk with him anymore.

## II

The first claim of error is that the trial judge erred in overruling the motion to suppress the appellant's oral confession given at the Bayou La Batre Police Station and later at the Mobile County Jail, on the grounds that each of these confessions was not shown by the State to be voluntary.

■■■ The rule is well established that extrajudicial confessions are prima facie involuntary and inadmissible, and the duty rests in the first instance on the trial court to determine whether or not a confession is voluntary. Duncan v. State, 278 Ala. 145, 176 So.2d 840, Harris v. State, 280 Ala. 468, 195 So.2d 521.

In the instant case, a hearing on the motion to suppress the confession was had, and the State put on evidence from all the persons present when Ballard made a number of oral confessions that Ballard was offered no reward, or inducement for the confessions; that no physical violence was committed against Ballard; that he was not told that it would be better if he confessed; and also that he was advised of his right to remain silent and to have an attorney present during the interrogations. Ballard's written waiver of his rights was introduced at the hearing on the motion. There was no evidence that Ballard ever asked for an attorney.

In Embrey v. State, 283 Ala. 110, 214 So.2d 567, the Alabama Supreme Court held that where it was shown no police officer offered the defendant any reward or hope of immunity, nor made any promise or threatened or intimidated the defendant in any way, and where it was shown that the defendant was advised of his rights to remain silent and to have a lawyer present at any interrogation should he desire one, the State met the burden of showing that the confession was voluntary.

■■■ The appellant in the instant case raises the issue that the police investigation and interrogation were conducted in such a manner as to circumvent the laws pertaining to the rights of the appellant to remain silent, mainly in using Deputy Patronis, a relative of the victim, as one of the moving factors in securing an admission against interest by the appellant. The appellant's counsel argues that by using Patronis, the victim's uncle, this in some way threatened or coerced the appellant into making an admission of his guilt. We have searched the record very carefully with reference to this claim, and this contention is not borne out. On the contrary, it is undisputed that the appellant actually asked to see Deputy Patronis alone, and at this instant Ballard admitted his guilt in the killing. The record further shows that Patronis offered him no reward or hope thereof, nor presented any threats or violence to his person, nor promised him that it would be better or worse for him if he did or did not make a statement. While this practice of using relatives of victims during the course of an investigation must of necessity be condemned as poor practice, the record in this case fails to show that any of the rights of Ballard were denied him or that he was the victim of police misconduct, therefore, we feel the evidence is sufficient to establish the appellant's confession was voluntary, and that the trial judge did not err in overruling the appellant's motion to suppress.

## III

The next point raised on appeal in this case is that error was committed in not declaring a mistrial on defendant's motion, where it was shown that the District At-

torney became excited and made certain statements in the presence of the jury.

This Court held in Hallman v. State, 36 Ala.App. 592, 61 So.2d 857:

"Title 30, Sec. 100, Code 1940 empowers the trial judge to declare a mistrial 'when in the opinion of the court or judge· there is a manifest necessity for the discharge, or when the ends of justice would otherwise be defeated.'

"Of necessity the right thus given must address itself to the sound discretion of the presiding judge."

■ While the record does show there was a sharp exchange at this point in the trial between counsel, the record further shows that from the beginning throughout the course and conduct of this trial tempers had run high, and there were heated exchanges between counsel. While this type of conduct is not desired in the courtroom and during the course of trial, our adversary system being such as it is, there will of necessity be certain instances where counsel for the State or the defendant in their zealousness will make statements that are not within the tradition expected of counsel. In these instances wide discretion must be given to the trial judge who is there throughout the course and conduct of the trial, and these instances must be viewed by him in the context of the overall trial in determining whether or not the utterance made is harmful and prejudical to the rights of the defendant.

■ In the instant case, the trial judge was there to hear the statement of the District Attorney, and it was his opinion that nothing prejudicial resulted to appellant, therefore, his judgment in this matter should not be disturbed.

## IV

Appellant further cites as error, the failure of the trial court to grant appellant a continuance in order that he could be properly evaluated medically as to his sanity.

As shown by the testimony of Dr. Claude Brown, a psychiatrist, Ballard was examined on five different occasions, from November 14, 1968, to April 16, 1970, and was not found to be insane on any of those occasions. Dr. Brown further stated that appellant was not an idiot, or moron, or imbecile, but a man of moderate intelligence. It was his recommendation that appellant be hospitalized to determine whether or not certain physical events in his background would affect the degree of his mental health. The request by appellant's counsel for this additional examination was denied.

■ The granting or refusing of a continuance is a matter entirely within the sound discretion of the trial court, and the exercise of this discretion will not be reviewed on appeal, except in cases where it is shown the court abused its discretion. Knowles v. Blue, 209 Ala. 27, 95 So. 481, Hite v. State, 282 Ala. 497, 213 So.2d 229, Hall v. State, 44 Ala.App. 406, 210 So.2d 852.

■ To warrant a continuance, the courts have agreed: (1) That the expected evidence must be material and competent; (2) that there must be a probability that the testimony can be obtained at a future time; (3) that due diligence must have been exercised to secure the evidence. Knowles v. Blue, supra. Applying these standards to the instant case, the trial court's denial on the motion for a continuance was not an abuse of discretion.

## V

■ Further, the appellant insists the court erred when it did not allow Dr. Brown to testify as to the appellant's mental state at the time of the alleged act. A search of the record does not indicate this precise inquiry was made, thus leaving this court with nothing to review.

## VI

We have considered the entire record under Code, 1940, Title 15, § 389, and from

this examination we conclude that error is not made to appear, and the judgment of the lower court is therefore affirmed.

The foregoing opinion was prepared by Honorable Billy C. Burney, Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of Section 38, Title 13, Code, 1940, as amended; the Court has adopted his opinion as its own.

The judgment below is hereby

Affirmed.

All Judges concur.