314 So.2d 857

**David WHITE**

v.

**The STATE of Alabama.**

**SC 1154.**

Supreme Court of Alabama.

May 22, 1975.

Rehearing Denied July 10, 1975.

Orzell Billingsley, Jr., Birmingham, for appellant.

William J. Baxley, Atty. Gen., and J. Donald Reynolds, Sp. Asst. Atty. Gen., for the State, appellee.

FAULKNER, Justice.

David White was indicted on a charge of First Degree Murder. He was convicted in the Circuit Court, Perry County, Virgis M. Ashworth, J., of First Degree Manslaughter and sentenced to ten years in the state penitentiary. He filed an appeal *in forma pauperis* with the Court of Criminal Appeals. On February 28, 1975, the case was transferred to the Supreme Court.

The questions presented for decision are whether or not there was a proper arraignment; whether or not White's due process rights to a fair trial were abridged by the failure of the prosecution to make a transcript of the grand jury minutes and testi-

mony, and by the conduct of the prosecution at the trial; whether or not certain expert testimony was properly admissible; and whether or not there was sufficient evidence properly in the record to sustain the verdict.

White's version of the facts of the case, which the State adopts, is as follows:

The Uniontown police were called to the Flame Club in Uniontown during the early morning hours of May 19, 1973, to investigate a shooting. They found the body of Lewis Fields lying in a side room adjoining the main barroom; a butcher knife was grasped in Field's right hand. There were no witnesses to the actual shooting.

Evidence presented at the trial showed that the deceased had been shot several times by forty-five caliber bullets. The parties stipulated that the shots were fired by the defendant.

Evidence was also introduced that the deceased had been rowdy and abusive to customers of the club and that the appellant, who was a partner in the operation of the club with his mother, had to chastise the deceased about his behavior on several occasions that night.

The only testimony directly involving the shooting was given by the appellant. White testified as to Fields' rowdiness and to his rebukes of Fields. He stated that at approximately 3:00 A.M. Fields began to curse some of the female customers of the club. In response to Fields' demands, White entered the "Black-Light Room;" Fields then grabbed him, pushed him against a wall, drew a knife from under his shirt, and advanced on him in a threatening manner. White testified that he backed against the wall, felt for his gun, pulled it out and fired as Fields moved toward him with the knife. White then fled and threw the gun into a creek. The following Monday, May 21, 1973, White, in the company of his attorneys, surrendered himself to the police and made a written statement. White was not advised of his rights since his attorneys were present.

During the opening statement the District Attorney contended that the knife was placed in the hand of the decedent. In the closing statement he said the defendant ran a "beer joint." In both instances the trial judge gave curative instructions.

At the trial, to bolster his contention of self-defense, White presented several witnesses to testify as to his good character and to corroborate his version of what had transpired before and after the shooting.

The State presented testimony by the law enforcement personnel who had investigated the shooting and by the State toxicologist who had examined the embalmed body of the deceased. After being qualified as an expert, the toxicologist gave his opinion in response to a hypothetical question that the deceased would have dropped the knife he was holding if he had been struck in the arm by three forty-five caliber bullets.

On November 29, 1973, the defendant was found guilty. On March 8, 1974, a hearing on the defendant's motion for a new trial was held. The defense introduced evidence as to the bad reputation of the decedent and urged that a new trial be granted. The motion was denied.

White contends that since arraignment is a "critical stage" in the trial, it is necessary to have a formal reading of the indictment. He implies that "Miranda warnings" should have been given him. He argues that he has a right to discover the grand jury minutes, and that the prosecution breached its duty to be fair and impartial. Another contention is that the hypothetical question asked of the toxicologist was improper and that the toxicologist should not have been permitted to give his opinion in response. A final contention is that the motion for a new trial should have been granted as there was insufficient evidence to sustain the verdict.

The State contends that there was no failure of arraignment since the judgment entry showed arraignment, plea, and trial. It argues that there was no error in failing

to produce the grand jury testimony and minutes, since there was no statute requiring it to be recorded. The State further contends that the trial judge did not abuse his discretion in allowing the State toxicologist to testify as an expert, in permitting the prosecution to ask the hypothetical question it did, and in allowing the expert's answer. The State argues lastly that it carried its burden in proving guilt beyond a reasonable doubt.

### Arraignment Issue

■ The contention that there was error because of no formal arraignment is without merit. The judgment entry showed arraignment, plea, and trial. White did not plead to some unknown charge. He entered his plea of not guilty, and was present when the indictment was read to the jury.

### Miranda Warning

■ Once a police investigation has ceased to be a general inquiry and has begun to focus on a particular suspect, when there has been a shift from the investigatory stage to the accusatory, the right to counsel attaches. *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). In cases of incommunicado interrogation in a police-dominated atmosphere, the "Miranda warnings" must be given, unless other fully effective means are devised to apprise accused persons of their right to silence and to assure a continuous opportunity to exercise it. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* requires that the warnings must be given before the police may question a suspect in custody. An accused may, however, waive effectuation of these rights. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) furnishes the controlling standard for waiver, "an intentional relinquishment or abandonment of a known right or privilege." Courts must indulge in every rea-

sonable presumption against such waiver. Here White's defense attorney was present when White made his voluntary statement. The attorney signed the statement as a witness. This constituted a "knowing and intentional waiver."

### Discovery Issue

■ In Alabama there is no statute requiring that testimony before a grand jury be recorded. The latest pronouncement is *Gaines v. State,* 52 Ala.App. 29, 30, 288 So.2d 810, 812 (1973) where it was stated, "Absent a statute requiring testimony before a grand jury be recorded and transcribed the general law does not require such testimony be recorded."

### Conduct of Prosecutor

■ No citations are necessary to establish that a criminal trial is not a "sporting event" and that the prosecutor has a duty to be fair and impartial. Erroneous insistences and prejudicial conduct on the part of district attorneys tend unduly to prejudice and bias the jury against the defendant. It is not permissible for the solicitor to make an emphatic statement that the defendant is guilty of the crime charged. *Rowland v. State,* 31 Ala.App. 605, 20 So.2d 881 (1945). The prosecution's opening statement to the jury on what it expects to prove should be confined to statements based on facts admissible in evidence. *Higdon v. State,* 25 Ala.App. 209, 143 So. 213 (1932). Counsel, however, is to be allowed considerable latitude in presenting to the jury in his opening statement what he expects the evidence to show. *Rogers v. State,* 49 Ala.App. 78, 268 So.2d 859 (1972). The trial judge must be given wide discretion in determining whether the making of a certain utterance by the District Attorney requires that a mistrial be granted. *Ballard v. State,* 51 Ala.App. 393, 286 So.2d 68 (1973). Here the trial judge gave curative instructions as to the knife and the "beer joint." We find no error.

### Expert Testimony and Hypothetical Questions

■ Where there are questions which inexperienced jurors are not likely to decide correctly, there is a necessity to admit opinion and conclusions of those specially skilled or experienced in the particular field; that is, experts who can give better opinions on a given state of facts. *Kirkland v. State,* 21 Ala.App. 348, 108 So. 262 (1926). Whether a witness is shown to possess the requisite qualifications of an expert is a preliminary question largely within the discretion of the trial court. *Kitchens v. State,* 31 Ala.App. 239, 14 So. 2d 739 (1943); *Brown v. Mobile Electric Co.,* 207 Ala. 61, 91 So. 802 (1921). The appellate court will not reverse its ruling unless there has been an abuse of that discretion. *Brown, supra; Lucy v. State,* 49 Ala.App. 116, 269 So.2d 134 (1972); *Colvin v. State,* 32 Ala.App. 142, 22 So.2d 544 (1945).

■ Generally an expert can give an opinion based on personal knowledge, or based on a hypothetical question, or on a combination of hypothetical question and facts within his own knowledge. If the expert bases his opinion on his personal knowledge, he must first testify to the facts within his own knowledge upon which the opinion is based. *Brown.* The criterion for admission of expert testimony is that the witness, by study, practice, experience, or observation as to the particular subject, should have acquired a knowledge beyond that of ordinary witnesses. *Kitchens,* supra; *Thomas v. State,* 249 Ala. 358, 31 So.2d 71 (1947). An expert may not give an opinion that invades the field of common knowledge. *Ala. Great So. R. R. v. Bishop,* 265 Ala. 118, 89 So.2d 738 (1956). If the subject is within the common experience of laymen, if it can be intelligently described and understood by them, and if they can form reasonable opinions, expert testimony is not to be allowed. Experts cannot base opinions on conflicting testimony of witnesses, as this would invade the province of the jury in evaluating credibility.

■ In Alabama an expert is allowed to testify whether certain facts could or would cause a result, but not whether they actually did. *Carpenter v. Walker,* 170 Ala. 659, 54 So. 60 (1910). A limitation is that an expert is not allowed to testify as to the relative positions of the parties at the time a shot is fired. *Crawford v. State,* 262 Ala. 191, 78 So.2d 291 (1954); *McPhearson v. State,* 271 Ala. 533, 125 So.2d 709 (1960); *Rigell v. State,* 8 Ala.App. 46, 62 So. 977 (1913); *Roden v. State,* 13 Ala.App. 105, 69 So. 366 (1915); *Uldric v. State,* 43 Ala.App. 477, 192 So.2d 736 (1966); *Padgett v. State,* 49 Ala.App. 130, 269 So.2d 147 (1972). The jury is equally competent to examine the wounds and draw conclusions as to the relative positions of the parties. In *Gipson v. State,* 262 Ala. 229, 78 So.2d 293 (1955), an expert was allowed to give an opinion that after the deceased was shot, he was knocked backward and fell on a bed. *Kitchens* stands for the proposition that the nature of a wound or injury, its probable cause and effect can be shown by expert medical witnesses or witnesses shown to be familiar with such questions, as a sheriff, an undertaker, or others showing competency.

■ An expert may also give an opinion in response to a hypothetical question; the question must embrace facts supported by the evidence and relating to the matter upon which the expert opinion is sought. The facts may be proven or assumed; the hypothetical question is inadmissible if the factual foundation is nebulous. For the purpose of the question, the facts are assumed to be true. The truth of the facts assumed is for the jury; it must determine whether the basis upon which the hypothetical rests has been established. An accurate statement of Alabama law is found in *Harden v. State,* 26 Ala.App. 94, 155 So. 719 (1933), where the general rule was stated that an expert may give an

opinion upon relevant matters under inquiry and he may base that opinion solely upon a hypothetical question without any personal knowledge of the matter inquired about. The hypothetical question should properly embrace only the facts in evidence and not certain matters as to which there is no evidence tending to support it. Rational inferences that may be drawn from testimony, as well as the positive and direct testimony itself, may form the basis for the question. Where the expert is not acquainted with the facts, which are in dispute, he may not express an opinion, but may be examined hypothetically. *Benefit Ass'n of Ry. Employees v. Armbruster,* 217 Ala. 282, 116 So. 164 (1928). An objection should be sustained where the hypothetical question invades the province of the jury as to a material issue in the case. *Ledbetter Johnson Co. v. Hawkins,* 267 Ala. 458, 103 So.2d 748 (1958). In answering a hypothetical question, it is always permissible for an expert to use information gained from an examination, where such information has been testified to before the jury. In general, the proper form of a hypothetical question asked of an expert, when based on evidence in the case, rests largely on the sound discretion of the trial court, and that court will not be put in error unless the discretion is abused.

 The State is on point in arguing that the qualification of expert witnesses and the form of hypothetical questions are matters within the discretion of the trial court judge. If the requisite predicate is laid for the expert testimony, and if the expert is duly qualified, he can give an opinion as to the cause of a wound and its effect. *Smith v. State,* 282 Ala. 268, 210 So.2d 826 (1968). *Gipson* is directly on point; an expert could testify that a wound, occurring as it did, would cause the victim to be knocked backward. "It is but the expression of the result of an accumulation of circumstances of which he has expert knowledge" at 298. As White points out, the relative positions of the parties *before* a shot is fired is not a proper subject for expert testimony; the *effect* of a shot is. The force and value of the expert's opinion is, of course, open to be combatted by other proof, that the opinion was worthless, and its value was for the jury to determine, in connection with all the evidence. *White v. State,* 133 Ala. 122, 32 So. 139 (1902).

### Burden of Proof, Sufficiency of the Evidence

 The burden is never on the defendant to establish his innocence; if the evidence raises reasonable doubt as to his guilt, he should be acquitted. *Hubbert v. State,* 32 Ala.App. 477, 27 So.2d 228 (1946). The State is not required to prove the impossibility of the accused's innocence. *Lovelady v. State,* 15 Ala.App. 615, 74 So. 734 (1917). It need only prove guilt beyond a reasonable doubt.

 Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty. *Lowe v. State,* 90 Fla. 255, 105 So. 829 (1925). Circumstantial evidence is said to be the inference of a fact in issue which follows as a natural consequence according to reason and common experience from known collateral facts. *Lowe, supra.*

 A trial judge has the power to grant a motion for a new trial if the verdict is contrary to the great preponderance of the evidence, or if there is newly-discovered evidence. *Davis v. State,* 245 Ala. 589, 18 So.2d 282 (1944). Granting the motion is largely within the discretion of the trial court, whose discretion should not be exercised to grant the relief sought except in plain cases of deviation from justice and right.

### Exclusion of Evidence of Reputation of Decedent

 Finally, White argues that certain evidence as to the victim's bad reputa-

tion was excluded. The law in Alabama is found in *Headley v. State,* 51 Ala.App. 148, 283 So.2d 458 (1973); if the evidence in a homicide trial tends to show self-defense, the defendant may prove the victim's bad general reputation for peace and quiet, for violence, as tending to show the victim was the aggressor. The trial court judge gave the defendant ample opportunity to do this. The hearing on the motion for a new 'trial was not the proper time to introduce more evidence, for the most part cumulative.

We have searched the record and find no error.

Affirmed.

HEFLIN, C. J., and BLOODWORTH and EMBRY, JJ., concur.

ALMON, J., concurs in the result.