WINDOM, Presiding Judge.
N.L.O. appeals his juvenile-delinquency adjudication based on the underlying offense of third-degree burglary, a violation of § 13A-7-7, Ala. Code 1975, and his resulting commitment to the Department of Youth Services.
N.L.O.’s adjudication stems from a burglary of Steve Meadows’s apartment on January 19, 2016, during which three rifles and two shotguns were stolen. Angela Box, who lived in an apartment adjacent to Meadows’s apartment, placed the time of the burglary at approximately dusk. Box testified that the burglary had occurred after she left her apartment to go to a grocery store. While Box was walking her dog after returning from the grocery store, she saw that a screen had been removed from a window on the rear of Meadows’s apartment.
Maqey Thompson, who lived with Meadows’s grandson Davey Posey in the apartment on the other side of Box, was cleaning her apartment around 4:30 p.m. when she saw N.L.O. walking on the sidewalk. N.L.O. walked up to Meadows’s porch and sat down. Thompson knew that Meadows was in the hospital and not at his apartment but testified that she gave little thought to N.L.O.’s presence because he was a friend of Meadows’s grandson Austin Posey and a frequent visitor at Meadows’s apartment. Thompson then saw a vehicle arrive and drop off Trey Bowers, who joined N.L.O. on Meadows’s porch. Soon thereafter, N.L.O. and Bowers knocked on Thompson’s front door; she did not answer, though, because she was the only person in her apartment. Thompson did not see the boys leave and did not notice any vehicles returning to Meadows’s apartment, causing her to speculate that the boys walked to the rear of Meadows’s apartment.
Officer Jeremy Bell of the Collinsville Police Department responded to Meadows’s apartment after the burglary had been reported. Officer Bell determined that the point of entry was a bedroom window at the rear of Meadows’s apartment. Officer Bell examined the window but was unable to locate any legible fingerprints. Officer Bell conceded that there had been no reports of two males walking on a public road carrying rifles and shotguns. Officer Bell surmised, though, that it would have been possible to have secreted the weapons in the wooded area that skirted the rear of the apartment complex in which Meadows lived.
Posey testified that N.L.O. was aware that Meadows possessed a number of guns because he had shown them to him on January 18, the day before the burglary. N.L.O. was a suspect from the outset because of Thompson’s seeing him on Meadows’s porch. Posey asked N.L.O. if he had stolen his grandfather’s guns. N.L.O. said that he had not. Soon thereafter, N.L.O. posted a message on Snapchat Stories.[1] The message was a photograph of N.L.O., who was holding a gun over his face, with the following caption: “ ‘Pull up, Posey, if you about that life.’ ” (R. 9.) Posey interpreted the message to be a threat. N.L.O. also posted another photograph that did not specifically reference Posey but did depict N.L.O. holding a gun. The gun or guns depicted in the photographs were not the guns stolen from Meadows.
N.L.O.’s sole claim on appeal is that the evidence was insufficient to sustain his adjudication as a juvenile delin *1199 quent on the underlying charge of third-degree burglary.
“A juvenile court may find a child delinquent ‘on proof beyond a reasonable doubt, based upon competent, material, and relevant evidence[] that the child committed the acts by reason of which the child is alleged to be delinquent.’ § 12-15-212(a), Ala. Code 1975. The general standard for assessing the sufficiency of the evidence is applicable to our review of juvenile proceedings. See J.W.B. v. State, 651 So.2d 73, 75 (Ala. Crim. App. 1994) (applying ‘ “[t]he general standard by which we review the evidence” ’ to a juvenile proceeding (quoting Robinette v. State, 531 So.2d 682, 687 (Ala. Crim. App. 1987))).”
J.M.A. v. State, 74 So.3d 487, 492 (Ala. Crim. App. 2011). Regarding the sufficiency of the evidence, this Court has held:
“In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala. Cr. App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state’s evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala. Cr. App.), cert. denied, 387 So.2d 283 (Ala. 1980). The trial court’s denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala. Cr. App. 1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala. Cr. App. 1983); Thomas v. State. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969); Willis v. State.”
Breckenridge v. State, 628 So.2d 1012, 1018 (Ala. Crim. App. 1993). Further,
“ ‘Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.’ White v. State, 294 Ala. 265, 272, 314 So.2d 857, cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). ‘Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.’ Cochran v. State, 500 So.2d 1161, 1177 (Ala. Cr. App. 1984), affirmed in pertinent part, reversed in part on other grounds, Ex parte Cochran, 500 So.2d 1179 (Ala. 1985). ‘It is not necessary for a conviction that the defendant be proved guilty to the “exclusion of every possibility of innocence.” ’ Burks v. State, 117 Ala. 148, 23 So. 530 (1898).”
White v. State, 546 So.2d 1014, 1017 (Ala. Crim. App. 1989).
Even so, “ ‘no rule is more fundamental or better settled than that convictions cannot be predicated upon surmise, speculation, and suspicion to establish the accused’s criminal agency in the offense charged.’” Mullins v. City of Dothan, 724 So.2d 83, 86 (Ala. Crim. App. 1998) (quoting Benefield v. State, 286 Ala. 722, 724, 246 So.2d 483, 485 (1971)). “ ‘ “A defendant should not be convicted on mere suspicion or out of fear that he might have committed the crime.” ’ ” Ex parte Parker, 136 So.3d 1092, 1095 (Ala. 2013) (quoting *1200 Ex parte Williams, 468 So.2d 99, 101 (Ala. 1986), quoting in turn Thomas v. State, 363 So.2d 1020, 1022 (Ala. Crim. App. 1978)).
“A person commits the crime of burglary in the third degree- if [he] khowingly enters or remains unlawfully in a dwelling with the intent to commit a crime therein.” § 13A-7-7(a)(1), Ala. Code 1976. N.L.O. argues that the State failed to prove that he entered or remained in Meadows’s apartment or that he had the intent to commit a crime therein. This Court agrees.
There is no dispute that a burglary occurred at Meadows’s apartment. N.L.O.’s only apparent connection to the burglary, however, is that he and Bowers were seen on Meadows’s porch near the alleged time of the. burglary. But the “mere presence of a person at the time and place of a crime is not sufficient to justify his conviction for the commission of the crime.” Lollar v. State, 398 So.2d 400, 402 (Ala. Crim. App. 1981) (citing Thomas v. State, 363 So.2d 1020 (Ala. Crim. App. 1978), and Kimmons v. State, 343 So.2d 542 (Ala. Crim. App. 1977)).
The State argues in its brief on appeal that because neither Meadows nor Posey were at the apartment, N.L.O. should not have been on Meadows’s porch. Such behavior, though, is entirely consistent with N.L.O.’s waiting on someone to arrive at an apartment he visited frequently. The State notes that N.L.O. had been banned from the apartment complex, but this fact is of little significance. According to Officer Bell, N.L.O. had been banned by the complex manager for an unrelated domestic dispute with a female resident. Nonetheless, the record indicates that N.L.O. was still welcomed as a , guest at Meadows’s apartment—Box. testified that N.L.O. was with Posey at Meadows’s apartment on the evening before the burglary. The State also cites N.L.O.’s Snapchat messages as consciousness of guilt. Although the messages may have been threats directed at Posey, the messages could be interpreted as N.L.O.’s being angry with Posey as a result of Posey’s -implicitly accusing him of burglary. •
. The State’s theory of the case was that N.L.O. and Bowers knew no one was at Meadows’s apartment and that N.L.O. knocked on Thompson’s door to confirm that no one was in her apartment. N.L.O. and Bowers then went to the rear of Meadows’s apartment, removed a window screen, entered through that window, took Meadows’s rifles and shotguns, and fled through a nearby wooded area. Although a finder of fact is permitted to make reasonable inferences from the evidence, the State’s theory is based almost entirely on “ ‘surmise, speculation, and suspicion.’ ” Mullins, 724 So.2d at 86 (quoting Benefield, 286 Ala. at 724, 246 So.2d at 485). Even the testimony placing N.L.O. and Bowers at the rear of Meadows’s apartment is speculative—Thompson testified that she saw N.L.O. and Bowers arrive and that “they had to have- [walked] around back” because “a couple of hours passed,” “[t]here [were] no cars that came up,” and she “never [saw] one Of the boys leave.” (R. 44.) The assumption that N.L.O. and Bowers walked to the rear of Meadows’s apartment because Thompson did not see them leave is unreasonable, especially in light of Thompson’s testimony that she was cleaning her living room and that she “didn’t think nothing about” N.L.O.’s and Bower’s presence on Meadows’s porch. (R. 43, 44.)
Even when the evidence is viewed in a light most favorable to the State, the State failed to present any evidence, direct or circumstantial, indicating that N.L.O. entered Meadows’s apartment or that he intended to commit the crime- of theft there *1201 in. Therefore, the evidence is insufficient to sustain N.L.O.’s adjudication as a delinquent.
Accordingly, the adjudication of delinquency by the juvenile court is reversed, and a judgment is rendered in N.L.O.’s favor.
REVERSED AND JUDGMENT RENDERED.
Welch, Burke, and Joiner, JJ., concur. Kellura, J., not sitting.

. "Snapchat is a smartphone application that allows users to send pictures and videos (not to exceed 10 seconds in length) to friends or followers. Unlike other social media applications, videos uploaded to Snapchat stories disappear after 24 hours.” In re M.H., 205 Cal.Rptr.3d 1, 4, 1 Cal.App.5th 699 (Cal. Ct. App. 2016).