SHAW, Judge.
In February 1999, Edward James Salva was involved in an automobile accident on Highway 231 in Marshall County; the accident resulted in serious bodily injury to David Edward Hooten.[1] Thereafter, Salva *234 was indicted for, and convicted of, first-degree assault, a violation of § 13A-6-20(a)(5), Ala.Code 1975,[2] and driving while under the influence of alcohol, a violation of § 32-5A-191(a)(2), Ala.Code 1975.[3] He was sentenced to 10 years’ imprisonment on the first-degree-assault conviction and 180 days’ on the driving-under-the-influence conviction. These sentences were to be served concurrently.
On appeal, Salva contends: (1) that the trial court committed reversible error when it denied his motion for a judgment of acquittal made at the conclusion of the State’s case and (2) that the trial court committed reversible error when it did not rule on Salva’s application for probation.
I.
Salva contends that the trial court erred in denying his motion for a judgment of acquittal made at the close of the State’s case because, he says, the evidence was insufficient to support the jury’s verdict. It is not entirely clear whether Salva is challenging the weight of the evidence or the sufficiency of the evidence; thus, out of an abundance of caution, we will address both the weight and the sufficiency.
Our review of the record reveals the following: Around midnight on the night of February 25, 1999, Hooten and Jarrett Pate were traveling south on Highway 231 when headlights suddenly appeared directly in front of them — headlights on a car traveling north in the southbound lane. A head-on collision resulted, and the impact of the collision caused Hooten’s pickup truck to strike a third vehicle — a pickup truck — driven by Robin Anderson, which was also traveling south on Highway 231. The northbound and southbound lanes on the portion of Highway 231 where the accident occurred are separated by a grassy median. This grassy median has a “relatively steep pitch” on each side — ■ “probably a three to four foot grade down” to “a drainage area in the middle.” (R. 60-61.)
Eva Hambrick, who was also traveling south on Highway 231 at the time of the accident, was a witness to the accident. She testified at trial that two pickup trucks were traveling in front of her when headlights from an oncoming vehicle suddenly appeared in the southbound lane — “It was like someone had just thought, oh, no, my lights, and jerked their lights on because they was just right there and the second the lights come on, the wreck happened.” (R. 96.) Hambrick testified that after the accident occurred, she pulled over, telephoned emergency 911, and then let the occupants of the two pickup trucks involved in the accident know that help was on the way. When asked if she had been able to ascertain to which vehicle the headlights she had seen belonged, Hambrick testified that she noticed a red automobile — like a Chevrolet Camaro or a Pontiac Trans-Am — had come to rest “[b]ack behind [her].” (R. 95.)
James Wessel, an emergency medical technician who responded to the scene of the February 25, 1999, accident, testified to the following at trial: When he arrived *235 at the scene he immediately noticed a red two-door vehicle, like a Chevrolet Camaro or a Pontiac Firebird in the median of Highway 231 “[slitting at a fairly steep angle” (R. 60); that this vehicle had come to rest “angled between ... what would be the southbound lane and the ditch” (R. 60); and that there was significant damage to both the front of the vehicle and the front driver’s side of the vehicle. When he looked inside the vehicle, he saw Salva, who “was restrained [i.e., his shoulder belt and lap belt were in position and buckled] and entrapped in the driver’s compartment [and] slumped over the steering wheel.” (R. 59.) Wessel testified that after other rescue workers arrived on the scene, he climbed through the rear window of the vehicle so that he would be in a position to stabilize Salva’s head while the rescue workers cut Salva out of his vehicle. Wes-sel testified that he spent approximately 45 minutes with Salva after the accident— most of this time, Wessel was inside the vehicle stabilizing Salva’s head — and that he noticed “a smell consistent with that of alcohol in the vehicle.” (R. 66.) Wessel also testified that he attempted to communicate with Salva the entire 45 minutes he spent with Salva after the accident and while Salva attempted several times to answer Wessel’s questions, Salva’s answers were “never presented to [Wessel] in a way that [he] could understand, it was very slurred and very mumbled” and that Salva “was just not able to verbally respond to [Wessel’s questions] in a coherent way.” (R. 68.) Wessel testified that it was his opinion, based on his observations of Salva while inside Salva’s vehicle — i.e., “[t]he slurred speech [and] [t]he smell of alcohol” (R. 71) — that Salva was “under the influence of alcohol” (R. 75) and that “he would not have been able to operate a vehicle.” (R. 76.)
Wessel testified that he “leaned in through the driver’s window and [Salva] was [slumped] over the steering wheel with his eyes closed [and when Wessel asked,] ‘Sir, can you hear me?’ [Salva] didn’t respond to [Wessel, so Wessel] reached in and lightly shook him ... [and] said, ‘Sir, can you hear me?’ And [Salva] opened his eyes and made sort of slurred-type noises.” (R. 62.) The following exchange occurred during Wessel’s testimony: ■
“[Prosecutor]: In making your determination about [Salva] being under the influence, did you take into account his reaction when you attempted to wake him up or when you attempted to rouse him?
“[Wessel]: Yes, sir.
“[Prosecutor]: In what way?
“[Wessel]: Trauma patients that are unresponsive due to injury we generally do not have the capability to make responsive usually if their injuries are so significant that they are unresponsive when we get there due to a trauma injury there’s nothing we can do for them. Mr. Salva, or [the] patient at that time, was unresponsive when I got there and woke up or became responsive when I spoke loudly to him and tapped him on the shoulder.”
(R. 72.)
“ ‘In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.’ ” Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984). “ ‘The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a ration *236 al finder of fact could have found the defendant guilty beyond a reasonable doubt.’ ” Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). “ ‘When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and in such a case, this court will not disturb the trial court’s decision.’ ” Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). “The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.” Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).
As Salva noted in his brief, there was no evidence offered to show Salva’s blood-alcohol content at the time of the accident. However, the fact that there was no evidence indicating Salva’s blood-alcohol content does not mean that the evidence was insufficient to prove that Sal-va was guilty of violating § 13A-6-20(a)(5), especially in light of the circumstantial evidence offered in support of this issue.
“ ‘Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.’ White v. State, 294 Ala. 265, 272, 314 So.2d 857, cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). ‘Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.’ Cochran v. State, 500 So.2d 1161, 1177 (Ala.Cr.App.1984), affirmed in pertinent part, reversed in part on other grounds, Ex parte Cochran, 500 So.2d 1179 (Ala.1985).”
White v. State, 546 So.2d 1014, 1017 (Ala.Crim.App.1989).
“In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F.2d 130 (5th Cir.1971); Clark v. United States, 293 F.2d 445 (5th Cir.1961).
“ ‘(W)e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir.1969); Roberts v. United States, 416 F.2d 1216 (5th Cir.1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir. 1967):
“ ‘ “Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir., 1963, 321 F.2d 140; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949. In Judge Thornberry’s words, “ ‘ “ ‘... the standard utilized by this Court is not whether in our *237 opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury might reasonably so conclude.’ Williamson v. United States, 5th Cir., 1966, 365 F.2d 12, 14. (Emphasis supplied)”
“ ‘The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is [to] examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged.’ McGlamory, 441 F.2d at 135 and 136.”
Cumbo v. State, 368 So.2d 871, 874-75 (Ala.Crim.App.1978).
Salva further contends that Wes-sel’s testimony was improper because Wessel was not qualified as an expert witness and that he testified as to the ultimate issue in the case. However, Alabama law provides that opinion testimony may be admitted on the issue of intoxication. “We note, moreover, that even where intoxication has been deemed to be an ultimate issue in a legal proceeding, prior Alabama caselaw has permitted witnesses to give opinion testimony as to this issue.” Tims v. State, 711 So.2d 1118, 1125 (Ala.Crim.App.1997). In Reuther v. City of Leeds, 599 So.2d 1246, 1248-49 (Ala.Crim.App.1992), this Court stated:
“Moreover, the officer’s statement that in his opinion the appellant was under the influence of alcohol at the time she was stopped was not an improper statement on an ultimate issue in the case.
“ ‘[T]here appears to be a modern trend in the direction of permitting experts to give their opinions upon ultimate issues whose final determination rests with the jury. The basic theory underlying the decisions forming this trend is that the expert should be allowed to give his opinion upon an ultimate issue if that will aid the jury in its decision. The Alabama courts have adopted language to the effect that because a question propounded to an expert witness will elicit an opinion from him in practical affirmation or disaffirmation of a material issue in a case will not suffice to render the question improper.’
“C. Gamble, McElroy’s Alabama Evidence § 127.01(5)(d) (4th ed.1991). ...
“The officer’s testimony, based on his experience, could clearly aid the jury in making its determination. Moreover, his testimony did not invade the province of the jury as testimony on the ultimate issue in this case.”
Wessel testified that he was an emergency medical technician (“EMT”); that as an EMT he had worked 300 to 400 “serious accidents” (R. 81); that he had observed the general effects that intoxication can have on a person’s demeanor and manner of speech; that he spent nearly 45 minutes with Salva after the accident; and that it was his opinion, based on his observations — the smell of alcohol and Sal-va’s general incoherence and slurred speech — that Salva was under the influence of alcohol at that time. Viewed in the light most favorable to the State, there was sufficient evidence presented from which the jury could have reasonably concluded that Salva was guilty of violating § 13A-6-20(a)(5). Therefore, there was sufficient evidence to support Salva’s conviction under § 13A-6-20(a)(5).[4]
*238 “ ‘[T]he “weight of the evidence” refers to “a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.” ’ ” Johnson v. State, 555 So.2d 818, 820 (Ala.Crim.App.1989), quoting Tibbs v. Florida, 457 U.S. 31, 37-38, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). “We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial.” Whitt v. State, 733 So.2d 463, 470 (Ala.Crim.App.1998). “ ‘[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.’ ” Harris v. State, 513 So.2d 79, 81 (Ala.Crim.App.1987), quoting Byrd v. State, 24 Ala.App. 451, 451, 136 So. 431, 431 (1931). “ ‘When the jury has passed on the credibility of evidence tending to establish the defendant’s guilt, this Court cannot disturb its finding.’ ” Rowell v. State, 647 So.2d 67, 69 (Ala.Crim.App.1994), quoting Collins v. State, 412 So.2d 845, 846 (Ala.Crim.App.1982). “Any issues regarding the weight and credibility of the evidence are not renewable on appeal once the state has made a prima facie case.” Jones v. State, 719 So.2d 249, 255 (Ala.Crim.App.1996).
Once the State established a prima facie case of first-degree assault pursuant to § 13A-6-20(a)(5), the weight of the evidence, i.e., any inconsistencies or conflicts in the evidence, were for the jury to resolve. The jury obviously resolved the conflicts adversely to Salva, and we will not disturb that finding on appeal.
II.
Salva also contends on appeal that the trial court erred when it failed to rule on his application for probation. Specifically, Salva argues that he was entitled to a formal order from the trial court on his application for probation and that his sentence should be reversed and the case remanded for a new sentencing hearing.
However, our review of the record reveals that Salva did not raise this issue — that he did not receive a ruling on his probation application — in the trial court. “Review on appeal is limited to review of questions properly and timely raised at trial.” Newsome v. State, 570 So.2d 703, 716 (Ala.Crim.App.1989). Consequently, this issue is not shbject to appellate review.
III.
As a result of this February 25, 1999, automobile accident, Salva was indicted for both first-degree assault pursuant to § 13A-6-20(a)(5), and for driving while under the influence of alcohol pursuant to § 32-5A-191(a)(2). The indictment reads as follows:
“Count 1:
“The GRAND JURY of said county charge that, before the finding of this INDICTMENT, EDWARD JAMES SALVA, whose name to the Grand Jury is otherwise unknown, did, while driving under the influence of alcohol or a controlled substance or any combination thereof in violation of Section 32-5A-191 ... cause serious bodily injury to the person of another, DAVID EDWARD HOOTEN, with a motor vehicle, in violation of Section 13A-6-20(a)(5) of the Code of Alabama 1975, as last amended, against the peace and dignity of the State of Alabama.
[[Image here]]
“Count 3:
“The GRAND JURY of said county charge that, before the finding of this *239 INDICTMENT, EDWARD JAMES SALVA, whose name to the Grand Jury is otherwise unknown, did, on or about, to-wit: February 25,1999, drive or be in actual physical control of a vehicle upon a public roadway in Marshall County, Alabama, to-wit: Mt. Olive Church Road and Union Grove Road,[5] while under the influence of alcohol to a degree which rendered him incapable of safely driving, in violation of Section 32-5A-191(a)(2), of the Code of Alabama, 1975, as last amended, against the peace and dignity of the State of Alabama.”
(C. 9.) As noted in footnote 5, at trial the State requested that count 3 of the indictment be amended, stating “we would move to amend that count by striking Mount Olive Church Road and Union Grove Road” and “putting Highway 231” in its place because “that’s where the wreck occurred.” (R. 20.)
In State v. McGaughy, 505 So.2d 399 (Ala.Crim.App.1987), McGaughy was involved in a two-vehicle accident, which resulted in injuries to another person. As a result of this automobile accident, he was charged with, and convicted of, driving while under the influence of alcohol (DUI), a violation of § 32-5A-191. After this DUI conviction, McGaughy was indicted for first-degree assault, a violation of § 13A-6-20(a)(3), arising from his actions in this same automobile accident. He moved to dismiss the indictment on the ground that this indictment charged him with an act for which he had already been convicted and he attached a copy of a stipulation of facts entered into by defense counsel and the State. The trial court granted McGaughy’s motion to dismiss, stating that prosecution of this indictment would result in a double-jeopardy violation. The State appealed. On appeal, this Court stated:
“[I]f the D.U.I. constitutes the State’s sole evidence of reckless conduct necessary to establish a violation of § 13A-6-20(a)(3), then appellant would have a substantial claim of double jeopardy under the Fifth and Fourteenth Amendments. ... Therefore, we assume that the State did not enter into the stipulation upon the basis that the D.U.I. is the sole evidence of recklessness; rather, as was stated in the stipulation, the State intends to rely on the D.U.I., but not necessarily to the exclusion of other evidence. While the indictment appears to support the theory that the State has additional evidence of recklessness, we do not have before us sufficient facts to so conclude. We, therefore, remand this case to the trial court to allow the State an opportunity to submit to the trial court additional evidence, if any, upon which it will rely in seeking to establish recklessness. After the State has been afforded this opportunity, the trial court is instructed to take further action not inconsistent with this opinion. We, therefore, reverse the judgment of the trial court and remand this case for such further proceedings.”
505 So.2d at 402-03 (first emphasis added). On return to remand, this Court stated the following, in pertinent part:
“[T]he trial court held a hearing and ruled, in part, the following:
“ ‘2) The State of Alabama, by admission of the Assistant District Attorney, entered into the prior stipulation of facts in this case with the belief that Driving Under the Influence was the sole act of recklessness involved. It was only after remand by the Court of Criminal Appeals that the State of *240 Alabama became aware of acts of possible other recklessness. The Court finds that the State of Alabama is bound by its prior stipulation in this case even though the word “exclusive” is not contained therein.
“ ‘Based on this stipulation and this finding the Court further finds that the constitutional proscription of double jeopardy bars the State of Alabama from proceeding to trial in this case.’
“This finding and ruling are based on the State’s candid admission that ‘at the time the state entered into that stipulation the DUI was the only act of recklessness that the state was aware of.’ However, our remand was based upon the assumption that ‘the State did not enter into the stipulation upon the basis that the D.U.I. is the sole evidence of recklessness.’ The record has been clarified on remand and, upon this clarification, we find that any prosecution on the instant indictment is barred by double jeopardy considerations. Accordingly, we affirm the trial court’s dismissal of the indictment.”
State v. McGaughy, 534 So.2d 1134, 1134-35 (Ala.Crim.App.1988)(opinion on return to remand).
Section 13A-6-20(a)(5) provides that “[a] person commits the crime of assault in the first degree if ... [wjhüe driving under the influence of alcohol ... in violation of Section S2-5A-191 he causes serious bodily injury to the person of another with a motor vehicle.” (Emphasis added.)
Salva did not raise a double-jeopardy claim either in the trial court or in this Court; however, in light of § 13A-1-8(b)(1), Ala.Code 1975 (“When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if ... [o]ne offense is included in the other.”), this Court requested that the parties file supplemental briefs addressing the following issue:
“Whether, under the facts of this case, driving under the influence of alcohol, a violation of § 32-5A-191(a)(2), Ala.Code 1975, was a lesser included offense of first-degree assault, pursuant to § 13A-6-20(a)(5), Ala.Code 1975, and, if so, whether the conviction for driving while under the influence is due to be reversed under the rationale of State v. McGaughy, 534 So.2d 1134 (Ala.Crim.App.1988), and Rolling v. State, 673 So.2d 812 (Ala.Crim.App.1995), and its progeny, including Powell v. State, 854 So.2d 1206 (Ala.Crim.App.2002), and the cases cited therein.”
Both parties filed supplemental briefs. Salva contends in his supplemental brief that “the charge of driving under the influence contained in Count I of the indictment and the charge of driving under the influence in Count III of said indictment are one and the same alleged violation in which the State relied upon in its case in chief in securing a conviction as to both Counts I and III” and that his conviction for driving under the influence is due to be reversed.[6] (Salva’s supplemental brief, p. 8.)
The State admits in its supplemental brief that “[h]ad the DUI count charged only generally the offense of DUI, it would *241 be consumed as an element of the assault [charge].” (State’s supplemental brief, page 3.) However, the State contends that “Salva’s separate convictions for both DUI and first degree assault are not violations of the prohibition against double jeopardy” (State’s supplemental brief, page 4) because, it says:
“The charge of DUI alleged specific factual circumstances that Salva drove or was ‘in actual physical control of a vehicle upon a public highway in Marshall County, Alabama, to-wit: Mt. Olive Church Road and Union Grove Road, while under the influence of alcohol to a degree which rendered him incapable of safely driving in violation of section 32-5A-191(a)(2).’ (C. 9.) The specific DUI charge against Salva alleged a criminal offense that was completely committed before Salva entered Highway 231 and committed the assault against Mr. Hoo-ten with his motor vehicle. Under the particular facts of Salva’s case, the conduct underlying the two separate offenses was not legally the same conduct that would prohibit conviction for the separate offenses.”
(State’s supplemental brief, p. 3.) However, as noted in footnote 5, count 3 was amended to strike “Mount Olive Church Road and Union Grove Road” and to replace it with “U.S. Highway 231.” (R. 20.) Thus, both counts 1 and 3 allege the same conduct and convictions under both counts are not permitted. See § 13A-l-8(b)(l); Rolling v. State, 673 So.2d 812 (Ala.Crim.App.1995), and its progeny, including Powell v. State, 854 So.2d 1206 (Ala.Crim.App.2002), and the cases cited therein.
Based on the foregoing, we affirm Sal-va’s conviction for first-degree assault, pursuant to § 13A-6-20(a)(5). Because the trial court lacked jurisdiction to adjudge Salva guilty of driving while under the influence of alcohol, we remand this case to the trial court for it to vacate that conviction and sentence. Due return shall be filed with this Court no later than 35 days from the date of this opinion.
AFFIRMED IN PART AND REMANDED WITH DIRECTIONS. 
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ, concur.

. Hooten testified at trial that he suffered a broken left femur and a broken right ankle during the February 25, 1999, automobile accident; that those injuries have required several surgeries; and that his doctor has told *234 him that he will be permanently impaired as a result of these injuries.

. Section 13A-6-20(a)(5) provides that "[a] person commits the crime of assault in the first degree if ... [w]hile driving under the influence of alcohol ... in violation of Section 32-5A-191 he causes serious bodily injury to the person of another with a motor vehicle.”

. The indictment included a count 2 charging Salva with first-degree assault, pursuant to § 13A-6-20(a)(3), Ala.Code 1975. At trial, the State elected to proceed under count 1 of the indictment, which charged Salva with first-degree assault, pursuant to § 13A-6-20(a)(5).

. In regards to Salva’s conviction for driving while under the influence of alcohol, a viola *238 tion. of § 32-5A-191(a)(2), see our discussion in Part III of this opinion.

. At trial, the State amended without objection count 3 of the indictment by striking “Mount Olive Church Road and Union Grove Road” and replacing it with “U.S. Highway 231.” (R. 20.)

. Salva also contends that his conviction for first-degree assault is due to be reversed because, he says, “Count I was void and failed to state an offense, and, as such, the trial court was without jurisdiction to adjudicate [Salva] guilty of the offense of first degree assault as purportedly charged in Count I and the conviction is due to be reversed.” (Sal-va’s supplemental brief, p. 18.)
However, we have reviewed count I of the indictment and find that it tracks the language of § 13A-6-20(a)(5). Rule 13.2(a), Ala. *241 R.Crim.P., provides that an indictment “shall be a plain, concise statement of the charge in ordinary language sufficiently definite to inform a defendant of common understanding of the offense charged and with that degree of certainty which will enable the court, upon conviction, to pronounce the proper judgment.” In Alabama, " '[a]n indictment is sufficient if it substantially follows the language of the statute violated, provided the statute prescribes with definitiveness the elements of the offense.’ " Travis v. State, 776 So.2d 819, 836 (Ala.Crim.App. 1997), aff’d, 776 So.2d 874 (Ala.2000), cert. denied, 531 U.S. 1081, 121 S.Ct. 785, 148 L.Ed.2d 681 (2001), quoting Breckenridge v. State, 628 So.2d 1012, 1015 (Ala.Crim.App. 1993). Section 13A-6-20(a)(5) clearly provides the elements of the offense. Thus, we find no merit to his contention.